# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 03-1570

CHARLES PETER ALLISON, *et al.*,

*Plaintiffs-Appellees*,

*v.*

DONALD N. SNYDER, JR., MARK S. CARICH,
and MICHAEL L. HOLMES,

*Defendants-Appellants.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 97-432-MJR—**Michael J. Reagan**, *Judge.*

ARGUED MAY 28, 2003—DECIDED JUNE 19, 2003

Before EASTERBROOK, MANION, and KANNE, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Persons charged with sex offenses in Illinois may be diverted before trial to civil confinement, if a mental illness of a least one year's duration led to the criminal conduct. Those who complete treatment successfully are released and the criminal charges dismissed. The Illinois Sexually Dangerous Persons Act, 725 ILCS 205/1.01 to 12, is described, and sustained against one constitutional challenge, in *Allen v. Illinois*, 478 U.S. 364 (1986). In this suit under 42 U.S.C. §1983, twenty-seven persons committed under the Act contend that it is being implemented unconstitutionally

in at least three ways: first, they are confined in one wing of an institution that also serves as a prison; second, their treatment includes self-accusatory features; third, it is conducted on a group rather than an individual basis. Plaintiffs seek both damages and injunctive relief. After discovery was completed, the district judge resolved some claims in favor of some defendants on summary judgment. But he rejected three defendants' argument that qualified immunity protects them from damages liability. These three have filed an interlocutory appeal. See *Behrens v. Pelletier*, 516 U.S. 299 (1996); *Scott v. Lacy*, 811 F.2d 1153 (7th Cir. 1987). The initial step in evaluating any immunity defense is determining whether the complaint states a claim, see *Saucier v. Katz*, 533 U.S. 194, 201 (2001), so we discuss the merits along with the question whether the legal principles on which plaintiffs rely were so clearly established that persons in defendants' position had to understand that what they were doing violated the Constitution.

All of the plaintiffs are confined at Big Muddy River Correctional Center. The three appellants are Donald Snyder, former Director of the Department of Corrections; Michael Holmes, the Warden of Big Muddy; and Mark Carich, its Public Service Administrator and the principal designer of the programs to which plaintiffs object. Snyder assigned plaintiffs to Big Muddy, where they mingle with convicts at meals and on some other occasions. Some detainees are housed two to a cell (though never with a convicted inmate). According to plaintiffs, these arrangements violate the Constitution because civil detainees are entitled to housing at facilities separate from convicts, and in the "least restrictive" environment. Plaintiffs' principal problem is the lack of any federal authority for these propositions. They contend, to quote their brief:

> Plaintiffs have not claimed that it is unconstitutional, per se, for them to be confined to a facility

that is labeled a "prison" and that also houses criminally convicted inmates. Their claim is a more general one that the Constitution requires them to be placed "in the least restrictive environment consistent with the purposes of the [Sexually Dangerous Persons Act]" and that they be provided "housing, recreation, education and treatment in facilities segregated from the general prison population as required by the SDPA."

The argument, in other words, is that the Constitution requires Illinois to fulfill promises that the plaintiffs locate in a state statute. Yet the Constitution does not compel states to follow their own laws. See *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 202 (1989); *Snowden v. Hughes*, 321 U.S. 1, 11 (1944); *Archie v. Racine*, 847 F.2d 1211, 1215-18 (7th Cir. 1988) (en banc). Nor does it permit a federal court to enforce state laws directly. See *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 106 (1984). Plaintiffs need a genuinely federal rule, such as the principle articulated in *Youngberg v. Romeo*, 457 U.S. 307, 321-22 (1982), that "[p]ersons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." Although the Court rejected in *Youngberg* an argument that the state must establish the "necessity" of keeping detainees in close custody, it held that they are entitled to "the exercise of professional judgment as to the needs of residents" (*id*. at 322). *Seling v. Young*, 531 U.S. 250, 265 (2001), generalizes the proposition this way: "due process requires that the conditions and duration of confinement . . . bear some reasonable relation to the purpose for which persons are committed."

Thus detainees may be subjected to conditions that advance goals such as preventing escape and assuring the

safety of others, even though they may not be punished. See *Allen*, 478 U.S. at 373-74. Does placement in a prison, subject to the institution's usual rules of conduct, signify punishment? The answer, given by *Bell v. Wolfish*, 441 U.S. 520 (1979), is no. *Wolfish* held that pretrial detainees, who like civil committees may be held for security reasons but not punished, may be assigned to prisons and covered by the usual institutional rules, which are designed to assure safety and security. Our plaintiffs were not assigned to high-security institutions, solitary, lockdown, or otherwise onerous confinement. And one must keep in mind that they are pretrial detainees as well as civil committees: criminal charges against them are pending. If pretrial detainees may be subjected to the ordinary conditions of confinement, as *Wolfish* holds, then so may persons detained before trial as sexually dangerous persons.

Plaintiffs do not assert that their situation is worse in any material way than the situation in which ordinary pretrial detainees find themselves. They do not contend, for example, that accused sex offenders suffer injury at the hands of convicted prisoners at Big Muddy more often than at each others' hands, something that if true might be thought to imply that they have been mixed with convicts because of (rather than in spite of) the special risks of violence in prison. Details such as double celling add nothing to plaintiffs' contentions. *Wolfish* rejected an argument that this practice equates to punishment. 441 U.S. at 530-43. College dorms, hospitals, and military barracks house people more than one to a room without amounting to punishment. Just so at Big Muddy. Plaintiffs initial challenge to their confinement therefore fails on the merits, making it unnecessary to consider immunity.

*Youngberg*, *Allen*, and *Seling* all show that detainees are entitled to some kind of treatment—but plaintiffs don't like the kind on offer. Illinois has concluded that the best treatment for sex offenders is group therapy in

which people admit their crimes (to others as well as to themselves), own up to and confront the urges that drive them to perpetrate heinous acts, and then assist each other in overcoming those urges. Illinois administers polygraph examinations to check whether participants in this program are being candid. Its approach is similar to the one described, and sustained against constitutional challenge, in *McKune v. Lile*, 536 U.S. 24 (2002). The principal ground of attack in *McKune* was that the state did not supply use immunity for information obtained in its self-accusatory program. The Court replied, in part, that immunity was unnecessary because participation in the program was voluntary; completion of the program entitled the offender to early release. Our plaintiffs say that, because they have not been convicted, they also can't earn early release and that their participation is accordingly involuntary. True enough, the plaintiffs in *McKune* had been convicted while our plaintiffs have not been, but each group enjoys an opportunity to get out earlier. Plaintiffs are free to turn down the treatment Illinois offers. This may make it harder to show that their problems are behind them, that release is in order, and that the criminal charges should be dismissed, but this does not make the choice any less willing or intelligent. An accused who turns down a plea bargain (or declines to assist the prosecutors) may end up with a longer sentence, but this does not vitiate the choice to confess. See *United States v. Klotz*, 943 F.2d 707, 710-11 (7th Cir. 1991).

Illinois contends, as Kansas did in *McKune*, that no participant in the treatment program ever has been criminally prosecuted on account of acts to which the participant admitted during the program. Plaintiffs do not offer any contrary evidence. They do say that, because criminal charges are pending against each of them, they are at greater risk than the Kansas inmates of a change in state practice. Nothing in the formal rules would prevent

Illinois from using statements made in the program as confessions in the event a detainee's treatment is deemed unsuccessful, his civil confinement ends, and the pending criminal charges are reactivated. This possibility is not, however, a ground of recovery. A majority of the Justices concluded in *Chavez v. Martinez*, No. 01-1444 (U.S. May 27, 2003), that courts may not award damages against investigators who wrongfully induce suspects to supply incriminating information that is never used in a criminal prosecution. Four Justices (Thomas, J., joined by Rehnquist, C.J., and O'Connor & Scalia, JJ.) held this because the self-incrimination clause applies only to evidence used in a criminal case; two Justices (Souter, J., joined by Breyer, J.) held this because any judicially crafted expansion of the clause should be implemented by remedies other than money damages. Although a different majority (Souter, J., joined by Stevens, Kennedy, Ginsburg & Breyer, JJ.) left open the possibility that damages could be awarded under a substantive-due-process theory in the event of genuine physical or mental coercion to speak, our plaintiffs do not contend that their arms were twisted or their health imperiled. So no matter what one makes of the risk that some day Illinois will use against a detainee evidence gathered in its treatment program, no damages remedy is available. Plaintiffs would be free to ask the court to suppress evidence offered against them; they are entitled to no more than that option.

*Youngberg* holds that, under the due process clause, detainees are entitled to non-punitive programs designed using the exercise of professional judgment. As the Court stated in *McKune*, many specialists think that self-accusatory features are essential to treatment (just as alcoholics must admit that they have a problem). Plaintiffs disagree with this proposition, and they distrust polygraphs, but neither *Youngberg* nor any other decision holds that judges or juries may substitute their judgment

for that of the professionals who design such programs. This suit is not about whether polygraphs are reliable enough for the results to be used in court; it is about whether wardens and psychologists must pay damages for using them (and other devices) as part of therapeutic programs. The answer is no; it is not clearly established (indeed, it is not the law) that self-accusatory programs and polygraph machines are forbidden when treating sex offenders. As far as the Constitution is concerned, it is enough that judgment be exercised. That the Association for the Treatment of Sexual Abusers (whose position papers may be found at <http://www.atsa.com/pubPPapers.html>) recommends programs different from the one Illinois uses is neither here nor there. The Constitution does not command state officials to follow the majority view of a given professional association. Plaintiffs have not supplied any reason for us to conclude that the choices made by Illinois are so far outside the bounds of professional norms that they must be equated with no professional choice at all. Indeed, plaintiffs have not adduced any expert evidence, period. (At the last minute they tendered a letter by a consultant whose principal writings have had to do with victims' recovered memories. This unsworn document, which showed up after the discovery deadline, has no evidentiary significance.) Nor have they cited any scholarly literature. The defendants' contention that Illinois is using programs that represent the application of reputable professional judgment stands without any serious contest.

As for plaintiffs' contention that treatment must be tailored to each individual rather than administered to groups: one court of appeals has said this (without explanation), see *Ohlinger v. Watson*, 652 F.2d 775, 778-79 (9th Cir. 1980), but what *Youngberg* held two years later is that (a) committed persons are entitled to some treatment, and (b) what that treatment entails must be decided

by mental-health professionals. *Youngberg* deprived the unreasoned assertion in *Ohlinger* of whatever slight value unreasoned judicial assertions otherwise carry. For reasons we have given, it is not possible to say on this record that Illinois' program exceeds the domain of legitimate professional judgment. The three appellants prevail on the merits, without any need for qualified immunity.

REVERSED

A true Copy:

       Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*