NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 21, 2013[*]
Decided February 22, 2013

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

WILLIAM J. BAUER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 11-3068

| | |
|---|---|
| RICHARD L. AMBROSE, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Southern District of Illinois. |
| | |
| *v.* | No. 08-cv-0533-SCW |
| | |
| SALVADOR A. GODINEZ, *et al.*, | Stephen C. Williams, |
| *Defendants-Appellees.* | *Magistrate Judge.* |

**O R D E R**

Richard Ambrose is civilly committed under the Illinois Sexually Dangerous Persons Act, 725 ILCS 205/1.01–12. In this lawsuit he raises a number of claims under 42 U.S.C. § 1983 and state law, all of which the district court (either directly or through a magistrate judge acting by consent) resolved in favor of the defendants at various points of the litigation. We affirm the judgment.

---

[*]After examining the parties' briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

Ambrose has been confined at Big Muddy River Correctional Center for more than a decade. In 2008 he (and several other detainees who are not parties on appeal) filed this action claiming that Mark Carich, a licensed counselor who designed and runs the facility's program for sexually dangerous detainees, had (1) refused him medical care, including sex-offender treatment, and (2) jeopardized his safety by housing him in the general population among convicted inmates and encouraging them to taunt and physically assault him. The operative complaint, which Ambrose filed after obtaining counsel, also named as defendants two other Big Muddy employees—counselor Karen Spilman and psychiatrist Angeline Stanislaus—along with the (now former) director of the Illinois Department of Corrections and his predecessor. After current director Salvador Godinez was appointed to his post in 2011, Ambrose voluntarily dismissed the individual-capacity claims against both former directors and substituted Godinez on the official-capacity claims.

The procedural history is complicated, and Ambrose has submitted a lengthy appellate brief challenging numerous rulings by the district court. We can simplify our review by carving away the insignificant claims and defendants, beginning with the claims arising under Illinois law. Ambrose asserted that the defendants violated statutes obligating the Department of Corrections to "safely" confine sexually dangerous persons and provide them with medical care, including "care and treatment . . . designed to effect recovery." *See* 725 ILCS 205/8; 730 ILCS 5/3-7-2(d). We cannot find any authority suggesting that the Illinois courts would infer a damages remedy from statutes regulating the Department of Corrections. *See McNeil v. Carter*, 742 N.E.2d 1277, 1280–81 (Ill. App. Ct. 2001) (concluding that Uniform Code of Corrections, of which § 5/3-7-2 is part, "does not provide a private cause of action for prisoners who receive inadequate medical care"); *Ashley v. Snyder*, 739 N.E.2d 897, 902 (Ill. App. Ct. 2000) (explaining that Unified Code of Corrections was "designed to provide guidance to prison officials in the administration of prisons," not to confer rights on inmates).

The claims against Director Godinez also can be put aside. Suing a state employee in his official capacity is the same as suing the state, *Norfleet v. Walker*, 684 F.3d 688, 690 (7th Cir. 2012); *Williams v. Wisconsin*, 336 F.3d 576, 580 (7th Cir. 2003), and a state is not a "person" subject to an action for damages under § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 64 (1989). It might be that Ambrose added Godinez to anchor prospective relief if he prevailed on constitutional claims against other defendants, *see Ex parte Young*, 209 U.S. 123 (1908); *Council 31 of the Am. Fed'n of State, County & Mun. Emps., AFL-CIO v. Quinn*, 680 F.3d 875, 882 (7th Cir. 2012), but his lawyer's statements at trial imply otherwise. After Ambrose presented his case in chief, counsel conceded that the § 1983 claims against Godinez must be dismissed because there was no evidence pointing to his "individualized knowledge" of the alleged constitutional violations. That concession suggests that Ambrose was trying to hold the Department of Corrections accountable for the policy decisions of its

directors, but governmental liability under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), is limited to municipalities, which a state is not. *See Joseph v. Bd. of Regents of Univ. of Wis. Sys.*, 432 F.3d 746, 748–49 (7th Cir. 2005); *Hernandez v. O'Malley*, 98 F.3d 293, 297 (7th Cir. 1996).

That leaves the § 1983 claims against Carich, Spilman, and Dr. Stanislaus. The district court dismissed the latter two at summary judgment on the ground that Ambrose had not exhausted his administrative remedies before filing suit. *See* 42 U.S.C. § 1997e(a). For this same reason the court dismissed Ambrose's allegations that Carich had denied him medical care for physical ailments, and that he instigated inmate assaults against the plaintiff. The grievance process applicable to Illinois prisons covers detainees at Big Muddy, *see Kalinowski v. Bond*, 358 F.3d 978–79 (7th Cir. 2004), and one requirement is that grievances supply "factual details regarding each aspect" of a detainee's complaint and also name, or at least describe, "each person who is the subject of or who is otherwise involved," 20 ILL. ADMIN CODE § 504.810(b); *see Maddox v. Love*, 655 F.3d 709, 720–21 (7th Cir. 2011). Ambrose submitted grievances, including several accusing Carich of verbal abuse and withholding efficacious sex-offender treatment. But no grievance mentions Spilman or Stanislaus by name or inference. And no grievance implicates Carich in a physical assault or complains that he withheld medical care for physical ailments.

So the district court properly narrowed the case to the § 1983 claims accusing Carich of inciting verbal abuse and failing to provide adequate sex-offender treatment. Carich never sought dismissal for failure to state a claim, and neither did he move for summary judgment on any ground other than failure to exhaust. Thus both claims reached trial, but after Ambrose rested, the district court concluded, relying on our decision in *Allison*, 332 F.3d at 1079–81, that Carich was protected by qualified immunity on the claim for failure to treat. The jury found for Carich on the other claim.

As the district court recognized, *Allison* rejects Ambrose's premise that, as a denier, he is entitled to alternative treatment. In Illinois a threshold step for participating in sex-offender treatment (or even being *evaluated* for treatment) is signing what the parties call a "waiver"—more accurately, a release—authorizing a participant's therapist to disclose information obtained during treatment. *See* ILL. ADMIN. CODE, tit. 20, § 1905.220. The form used at Big Muddy (we do not have a copy because neither party submitted it to the district court) includes language representing that the signing participant will abide by the program's rules, which include admitting past misconduct. Ambrose refused to sign this form because he denies committing a sex offense; he insists that the form is a barrier to treating detainees who deny being sex offenders and claims that the absence of alternative programming constitutes deliberate indifference to his serious mental-health needs. Yet we concluded in *Allison* that a treatment program requiring sexually dangerous persons to

admit past wrongs is constitutionally permissible and that those who opt out because of this feature are not entitled to alternative programming. *Allison*, 332 F.3d at 1079–80. Although Carich was one of the defendants in that litigation, his lawyers did not bring the decision to the court's attention until it was time to prepare jury instructions. Ambrose tried to distinguish his claim from *Allison*—his focus, he said, is the release form, not the self-accusatory element of the treatment program—but the crux of his claim, as he eventually conceded at trial, is that he wants treatment without accepting responsibility. Thus, the district court correctly dismissed Ambrose's § 1983 claim for failure to provide adequate sex-offender treatment.

On the claim of verbal abuse rejected by the jury, Ambrose objects to a previously unchallenged jury instruction stating that verbal harassment alone does not violate the Eighth Amendment. Giving that instruction was not error, let alone plain error. *See Higbee v. Sentry Ins. Co.,* 440 F.3d 408, 409–10 (7th Cir. 2006); *DeWalt v. Carter,* 224 F.3d 607, 612 (7th Cir. 2000). Ambrose also contends that Carich testified falsely on a number of subjects, but Carich's credibility was a question for the jury, not this court, to decide. *See Whitehead v. Bond*, 680 F.3d 919, 926 (7th Cir. 2012); *Filipovich v. K&R Express Sys, Inc.*, 391 F.3d 859, 863 (7th Cir. 2004).

Ambrose's remaining arguments are without merit and do not warrant discussion. Accordingly, the judgment is AFFIRMED.