# Illinois Official Reports

## Appellate Court

---

### *Schloss v. Jumper*, 2014 IL App (4th) 121086

---

| | |
|---|---|
| Appellate Court Caption | JEREMY L. SCHLOSS, Plaintiff-Appellant, and WALTER PEGUES, Plaintiff, v. SHAN JUMPER, FORREST ASHBY, and THE DEPARTMENT OF HUMAN SERVICES, Defendants-Appellees. |
| District & No. | Fourth District<br>Docket No. 4-12-1086 |
| Rule 23 Order filed<br>Rule 23 Order<br>withdrawn<br>Opinion filed | April 23, 2014<br><br>June 5, 2014<br>June 5, 2014 |

| | |
|---|---|
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from the dismissal of the *pro se* amended complaint filed by a detainee civilly committed under the Sexually Violent Persons Commitment Act alleging, in multiple counts, various inadequacies in his treatment program, the only viable claim before the appellate court was the allegation that unreasonable restrictions were imposed on free speech by restricting access to forms of media based on security and therapy concerns, and the appellate court held that the media restrictions, including the restrictions on access to movies and video games on a prohibited media list "which contains titles with sexual and/or graphic violent themes deemed especially counter-therapeutic," were reasonable and not unconstitutional, especially in view of the review procedure available for specific unrated movies and games and the fact that unrestricted access to all media would likely interfere with treatment efforts and the operation of a secure and orderly facility. |

| | |
|---|---|
| Decision Under Review | Appeal from the Circuit Court of Schuyler County, No. 12-CH-6; the Hon. Alesia A. McMillen, Judge, presiding. |

| Judgment | Affirmed. |
|---|---|
| Counsel on Appeal | Jeremy L. Schloss, of Rushville, appellant *pro se*. |
| | Craig L. Unrath, of Heyl, Royster, Voelker & Allen, of Peoria, and Shay H. Matthews, of Heyl, Royster, Voelker & Allen, of Edwardsville, for appellee Shan Jumper. |
| | Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Christopher M.R. Turner, Assistant Attorney General, of counsel), for other appellees. |
| Panel | JUSTICE HARRIS delivered the judgment of the court, with opinion. Justices Pope and Knecht concurred in the judgment and opinion. |

**OPINION**

¶ 1    In September 2012, plaintiff, Jeremy L. Schloss, a detainee in the Rushville Treatment and Detention Center, filed a *pro se* amended complaint against defendants, Shan Jumper and Forrest Ashby, alleging defendants imposed unreasonable restrictions on free speech by restricting plaintiff's access to various forms of media based on security or therapy concerns. In November 2012, defendants filed separate motions to dismiss, which the trial court granted.

¶ 2    On appeal, plaintiff argues the trial court erred in granting defendants' motions to dismiss. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4    Plaintiff has been civilly committed pursuant to the Sexually Violent Persons Commitment Act (Act) (725 ILCS 207/1 to 99 (West 2010)). Plaintiff has finished serving his criminal sentence but has been detained indefinitely in a secure Department of Human Services (DHS) facility for treatment because he has been found beyond a reasonable doubt to suffer from a "mental disorder that makes it substantially probable that [he] will engage in acts of sexual violence." 725 ILCS 207/5(f) (West 2010). A detainee under this Act may petition for conditional release annually, but conditional release is granted only if enough progress in treatment has been made that the detainee is no longer substantially probable to engage in acts of sexual violence if on conditional release. 725 ILCS 207/60 (West 2010).

¶ 5    Plaintiff has been civilly committed to DHS custody since July 2008. Plaintiff resides in the Rushville Treatment and Detention Center in Rushville, Illinois, a facility operated by

DHS. Defendant Shan Jumper is the clinical director of the facility and defendant Forrest Ashby is the facility's director.

¶ 6        On February 29, 2012, plaintiff and Walter Pegues filed a *pro se* civil rights complaint against Jumper, Ashby, and DHS alleging violations of the United States Constitution and the Illinois Constitution. Defendants filed separate motions to dismiss, arguing plaintiffs failed to comply with Illinois pleading requirements and failed to state claims upon which relief could be granted. Following a hearing on July 26, 2012, the trial court dismissed plaintiffs' complaint with leave to amend.

¶ 7        On September 27, 2012, plaintiffs filed a five-count amended complaint, naming only Jumper and Ashby as defendants. Plaintiffs alleged in count I defendants failed to provide treatment that offered a realistic opportunity to meet the statutory requirements for release from confinement, in violation of the fourteenth amendment. In count II, plaintiffs alleged a violation of substantive due process, claiming defendants failed to clearly define rules of conduct, failed to provide a grievance procedure, and enacted policies based on security issues that do not exist, and additional allegations involving the inadequacies of the treatment program, such as a lack of sufficiently trained staff.

¶ 8        Plaintiffs alleged in count III a violation of their right to free speech by defendants restricting plaintiffs' access to various forms of media based on security or therapy concerns. Specifically, plaintiffs alleged defendants published and distributed a list "of movies and video games that are restricted, and/or prohibited based upon their [Motion Picture Association of America (MPAA)] or [Entertainment Software Rating Board (ESRB)] rating, and 'Unrated' media is deemed contraband and prohibited." Plaintiffs asserted these guidelines effectively ban unrated media. Plaintiffs alleged the rating systems are not a proper basis for determining which media may be purchased or possessed by residents of a detention and treatment facility. Plaintiffs admitted a resident handbook provides unrated media may be submitted to a treatment team for approval for resident-viewing purposes. Plaintiffs asserted, however, "[i]t would be a futile effort to *** seek approval because *** defendants have already declared *** the media *** prohibited."

¶ 9        Plaintiffs alleged further, in count IV of the amended complaint, a claim for violation of due-process rights under the fourteenth amendment where defendants' actions resulted in overly restrictive and punitive conditions. In count V, plaintiffs alleged defendants unlawfully confined them without legal authority and treated them in a manner inconsistent with other mental-health facilities. Plaintiffs sought declaratory relief that their constitutional rights had been violated, compensatory and punitive damages, and injunctive relief.

¶ 10       On November 1, 2012, defendant Jumper filed a motion to dismiss pursuant to section 2-619.1 of the Code of Civil Procedure (Procedure Code) (735 ILCS 5/2-619.1 (West 2010)). Jumper argued counts I, II, and IV of plaintiffs' amended complaint were barred by *res judicata.* The case on which defendant Jumper based his *res judicata* defense was Schloss v. Ashby, No. 11-CV-3337, 2011 WL 4804868 (C.D. Ill.) (hereinafter, *Schloss*), filed by plaintiffs against defendants on August 26, 2011, in the United States District Court for the Central District of Illinois, Springfield. In *Schloss*, sexually violent detainees at Rushville (including plaintiffs) sued the facility to contest, in part, the constitutionality of a gaming-console ban. The district court dismissed plaintiffs' initial complaint for failure to state a claim, concluding the plaintiffs did not state a claim under the first amendment that the ban on gaming consoles was not rationally related to a legitimate institutional goal. The district

court granted plaintiffs leave to file an amended complaint, directing plaintiffs to detail only a due-process claim based on an alleged lack of rehabilitative treatment. Plaintiffs filed an amended complaint on November 14, 2011, which the district court dismissed on August 10, 2012, for failure to state a federal claim. Plaintiffs appealed and the Seventh Circuit Court of Appeals dismissed the appeal for failure to pay the required docketing fee.

¶ 11 In his motion to dismiss, defendant Jumper also argued plaintiffs' amended complaint should be dismissed because plaintiffs failed to state claims upon which relief could be granted. On November 9, 2012, defendant Ashby filed a motion to dismiss plaintiffs' amended complaint incorporating defendant Jumper's arguments.

¶ 12 Also on November 9, 2012, plaintiffs sought an extension of time to respond to defendants' motions to dismiss, from a previously agreed-to date of November 15, 2012, to December 30, 2012. Plaintiff Schloss asserted he was preparing to represent himself at trial in another matter and had limited access to legal research.

¶ 13 Without ruling on plaintiffs' motion for an extension of time, the trial court granted defendants' motions to dismiss with prejudice in an order dated November 20, 2012. Specifically, the court found plaintiffs failed to state a claim upon which relief could be granted and some of plaintiffs' claims were barred by *res judicata*. On November 29, 2012, plaintiff Schloss filed a notice of appeal. Plaintiff Pegues is not a party to this appeal.

¶ 14 <center>II. ANALYSIS</center>

¶ 15 In the case *sub judice*, the trial court granted defendants' motions to dismiss under section 2-619.1. A motion under section 2-619.1 allows a party to "combine a section 2-615 motion to dismiss based upon a plaintiff's substantially insufficient pleadings with a section 2-619 motion to dismiss based upon certain defects or defenses." *Edelman, Combs & Latturner v. Hinshaw & Culbertson*, 338 Ill. App. 3d 156, 164, 788 N.E.2d 740, 747 (2003). On appeal, the trial court's dismissal of a complaint under section 2-619.1 is reviewed *de novo*. *Morris v. Harvey Cycle & Camper, Inc.*, 392 Ill. App. 3d 399, 402, 911 N.E.2d 1049, 1052 (2009).

¶ 16 We first address the trial court's dismissal of plaintiff Schloss's amended complaint pursuant to section 2-619, finding "some of Plaintiffs' claims are barred by *res judicata*." In their motions to dismiss, defendants argued counts I, II, and IV of plaintiffs' amended complaint were barred by *res judicata*. On appeal, defendants argue the amended complaint, in its entirety, is barred under the doctrine of *res judicata*.

¶ 17 In his reply brief, plaintiff admits counts I, II, IV, and V of his amended complaint are barred by the doctrine of *res judicata*, stating he does not wish to "re-litigate a previously decided case or claims." Defendant states he is pursuing "Count III only as it pertains to the unreasonable restrictions of Free Speech."

¶ 18 This court accepts plaintiff's concession that counts I, II, IV, and V of his amended complaint are barred by the doctrine of *res judicata*. As to count III of plaintiff's amended complaint, defendants did not argue in their motions to dismiss that count III was barred by *res judicata*. *Res judicata* is an affirmative defense, which a defendant forfeits if not raised. *Village of Maywood Board of Fire & Police Commissioners v. Department of Human Rights*, 296 Ill. App. 3d 570, 578, 695 N.E.2d 873, 879 (1998). Defendants are barred from raising this defense for the first time on appeal.

¶ 19     We next address the trial court's dismissal of plaintiff's amended complaint pursuant to section 2-615, finding plaintiff's amended complaint failed to state a claim upon which relief could be granted. Plaintiff has abandoned counts I, II, IV, and V on appeal. As a result, on appeal, we address only whether count III states a claim upon which relief may be granted.

¶ 20     A section 2-615 motion attacks the legal sufficiency of the complaint. *Turner v. Memorial Medical Center*, 233 Ill. 2d 494, 499, 911 N.E.2d 369, 373 (2009). "To survive a motion to dismiss for the failure to state a cause of action, a complaint must be both legally and factually sufficient." *Rodriguez v. Illinois Prisoner Review Board*, 376 Ill. App. 3d 429, 434, 876 N.E.2d 659, 664 (2007). "The question presented by a section 2-615 motion to dismiss is whether the allegations of the complaint, when taken as true and viewed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted." *Turner*, 233 Ill. 2d at 499, 911 N.E.2d at 373. Illinois is a fact-pleading jurisdiction in which the plaintiff must allege specific facts to bring the complaint's allegations within a recognized cause of action. *Turner*, 233 Ill. 2d at 499, 911 N.E.2d at 373. The trial court should only grant a section 2-615 motion where it appears that the plaintiff can plead no set of facts that would entitle him to relief. *Ozuk v. River Grove Board of Education*, 281 Ill. App. 3d 239, 244, 666 N.E.2d 687, 691 (1996).

¶ 21     In count III of his amended complaint, plaintiff claimed defendants violated his civil rights by restricting access to various forms of media based on security or therapy concerns. Count III states:

> "The actions of the [DHS] dafendants [*sic*] as alleged in paragraphs 1 to 49 constitute unreasonable and unwarranted restrictions on plaintiffs' right to freedom of speech and expression, in violation of his rights, privileges, and immunities guaranteed by the First Amendment to the United States Constitution, and Article I, Section 4 of the Illinois Constitution, and further violate our rights as guaranteed by restricting our access to various forms of media based upon security or therapy concerns."

¶ 22     "The fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment ***." *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125 (1977). Restrictions on an inmate's constitutional rights are valid if they are reasonably related to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 89 (1987). Although defendants recognize this standard is used for prisoners' claims, this is the standard the Seventh Circuit Court of Appeals has applied to constitutional claims by civil detainees. See *Lane v. Williams*, 689 F.3d 879, 884 (7th Cir. 2012). As the Seventh Circuit Court of Appeals explained in *Lane*:

> "Because *Turner* tells courts to consider the challenged regulation in relation to the government's legitimate interests, it would not be too difficult to adapt its standard for claims by civil detainees. To do so, courts would only have to recognize the different legitimate interests that governments have with regard to prisoners as compared with civil detainees." *Lane*, 689 F.3d at 884.

Thus, we believe an analysis utilizing the factors set forth in *Turner* is appropriate here despite the fact that plaintiff is not a prisoner. See *Bell v. Wolfish*, 441 U.S. 520, 546 (1979) ("A detainee simply does not possess the full range of freedoms of an unincarcerated individual" because "[t]he fact of confinement as well as the legitimate goals and policies" of the institution limit constitutional rights.); *Allison v. Snyder*, 332 F.3d 1076, 1079 (7th Cir. 2003)

(persons confined as sexually violent "may be subjected to the ordinary conditions of confinement").

¶ 23    To determine the reasonableness of defendants' conduct, restricting plaintiff's access to various forms of media based upon security or therapy concerns, this court will consider four factors: (1) whether there is a " 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates"; and (4) whether there is an "absence of ready alternatives." *Turner*, 482 U.S. at 89-90.

¶ 24    DHS has promulgated rules detailing the rights of sexually violent persons detained in a secure residential facility. Plaintiff admits the Rushville Treatment and Detention Facility "is operated by [DHS] and is governed by Illinois Administrative Code Title 59." Section 299.330(e) of Title 59 of the Illinois Administrative Code (Administrative Code) provides sexually violent persons "may only acquire personal property in accordance with provisions of this Part or posted rules established by the Program Director where the resident is assigned." 59 Ill. Adm. Code 299.330(e) (2000). The Administrative Code further provides:

> "1) Possession and use of certain classes of property may be restricted by the Program Director when necessary to protect the resident or others from harm.
>
> 2) The professional responsible for overseeing the implementation of a resident's services plan may, with the approval of the Program Director, restrict the right to property when necessary to insure implementation of the services plan, protect such resident or others from harm, or as part of the Resident Behavior Management System." 59 Ill. Adm. Code 299.330(e)(1), (2) (2000).

¶ 25    In a memorandum dated January 13, 2011, the program director advised residents of the Rushville Treatment and Detention Facility regarding "MOVIE AND GAME PROHIBITED LISTS." Although the memorandum was not attached to the pleadings before the trial court, defendants include in their appendix before this court a copy of the memorandum, and both plaintiff and defendants cite the memorandum in their appellate briefs. Accordingly, we will consider the memorandum here. The memorandum advised residents they may purchase or possess R-rated movies and MA-rated video games except for those on a prohibited media list "which contains titles with sexual and/or graphic violent themes deemed especially counter-therapeutic." Further, a note appearing on the list of restricted movies included the following: "All movies must be rated by the Motion Picture Association of America (MPAA). Any movies that are un-rated or not rated by the MPAA are restricted. The only exceptions are movies made prior to the MPAA rating system (1968) that are general, non-graphic movies." A similar note appearing on the list of restricted video games states: "All un-rated Video Game Demos and Rating Pending (RP) Video Games are restricted."

¶ 26    Plaintiff does not allege he was denied *all* media or access, only that he does not have unfettered access to media opportunities. This is not a claim upon which relief may be granted.

¶ 27    Specifically, plaintiff makes a limited attack on section 299.330 of Title 59 of the Administrative Code but admits the treatment and detention center "is operated by [DHS] and is governed by Illinois Administrative Code Title 59." Plaintiff challenges the reliance on the rating systems to screen out movies and video games for inmate viewing. Specifically, plaintiff asserts he has been denied access to "medias of legal, educational and of a religious subject matter because they are not rated or governed by the ESRB or the MPAA." However, in his

amended complaint, plaintiff stated a resident handbook provides unrated media may be submitted to a treatment team for approval for resident viewing purposes. Plaintiff admits he did not avail himself of this procedure, deeming it futile.

¶ 28 Here, the program director articulated a " 'valid, rational connection' " between the media restrictions and the therapy concerns. *Turner*, 482 U.S. at 89. As the memo states, the therapy concerns arise from R-rated movies and MA-rated video games "which contain[ ] titles with sexual and/or graphic violent themes." Striking down these restrictions could negatively impact therapy concerns. See also *McKune v. Lile*, 536 U.S. 24, 36 (2002) ("[R]ehabilitation is a legitimate penological interest that must be weighed against the exercise of an inmate's liberty."); *Turner*, 482 U.S. at 91 (rehabilitation and maintaining security are legitimate penological interests); *Allison*, 332 F.3d at 1079 (preventing escape and assuring safety of others are legitimate institutional interests). In addition, the treatment and detention center has an interest in promoting rehabilitation and a therapeutic environment by preventing residents from viewing movies that may reinforce cognitive distortions or sexual deviance and playing video games that may encourage antisocial or obsessive behavior. See *Hedgespeth v. Bartow*, No. 09-CV-246-SLC, 2010 WL 2990897, at *7 (W.D. Wis. July 27, 2010). Moreover, defendants have a legitimate security interest in making uniform rules regarding property ownership and media restrictions to prevent discord, extortion, and unauthorized property exchanges among patients, as well as legitimate security and rehabilitative interests in keeping potentially damaging materials out of the institution altogether. See *Hedgespeth*, 2010 WL 2990897, at *8.

¶ 29 To be sure, the ban means "un-rated or not rated" movies made after the MPAA rating system (1968) and "un-rated Video Game Demos and Rating Pending (RP) Video Games" are presumptively unavailable for purchase or possession. However, the resident handbook creates a procedure by which residents may present specific unrated movies and video games for a determination by a treatment team whether the movie or video game may be purchased or possessed.

¶ 30 With regard to the second and fourth *Turner* factors, plaintiff has alternate means to exercise his first amendment rights that do not involve the purchase or possession of movies and games titled with sexually or graphically violent themes, while the facility has no ready alternatives to avert the therapy concerns posed by movies and games with sexually or graphically violent themes other than restricting them. See *Turner*, 482 U.S. at 90. Plaintiff has access to all R-rated movies and MA-rated video games that do not appear on the "MOVIE AND GAME PROHIBITED LISTS" and additional media through allowable books, newspapers, magazines, television, and radio. He is not constitutionally required to have access to all media. See *Singer v. Raemisch*, 593 F.3d 529, 539 (7th Cir. 2010) (banning of fantasy role-playing games was rationally related to legitimate penological interests and the prisoner had alternative means of exercising his right, such as possessing other reading materials or playing allowable games).

¶ 31 Finally, unrestricted access to all media would likely interfere with the efforts to treat residents and operate the facility in a secure and orderly manner. See *Turner*, 482 U.S. at 90. It is dubious the constitution would require a treatment and detention facility for sexually violent persons to permit its residents the unfettered right to purchase or possess movies and games with sexually or graphically violent themes deemed "counter-therapeutic." Such an interpretation would ignore the substantial deference afforded the facility's administrators. See

*Beard v. Banks*, 548 U.S. 521, 528 (2006) ("[C]ourts owe 'substantial deference to the professional judgment of prison administrators.' [Citation.]").

¶ 32    For the reasons set forth above, we find the media restrictions to be reasonable and not unconstitutional. Consequently, plaintiff failed to state a cognizable first-amendment claim against defendants and count III of his complaint was properly dismissed with prejudice.

¶ 33    Plaintiff next argues the trial court erred by granting defendants' motions to dismiss without ruling on his motion for an extension of time to respond to defendants' motions to dismiss. We disagree.

¶ 34    Following a hearing on July 26, 2012, the trial court entered an order granting defendants' motions to dismiss plaintiff's initial complaint. Plaintiff and defendants agreed plaintiff would have until October 1, 2012, to file an amended complaint, and defendants would have until November 1, 2012, to respond. Plaintiff would then have until November 15, 2012, to reply to defendants' responses.

¶ 35    Plaintiff filed his amended complaint on September 27, 2012. On November 1, 2012, and November 9, 2012, defendants filed their motions to dismiss plaintiff's amended complaint. Also on November 9, 2012, plaintiff sought an extension of time, from November 15, 2012, to December 30, 2012, to respond to defendants' motions to dismiss. Plaintiff asserted he was preparing to represent himself in trial and had limited access to legal research.

¶ 36    Without ruling on plaintiff's motion for an extension of time, the trial court granted defendants' motions to dismiss with prejudice in an order dated November 20, 2012. Specifically, the court found plaintiff failed to state a claim upon which relief could be granted and some of plaintiff's claims were barred by *res judicata*. Plaintiff did not file a motion to reconsider the court's order granting defendants' motions to dismiss. Instead, plaintiff filed a notice of appeal on November 29, 2012.

¶ 37    "The [trial] court has the right and duty to control its own docket." *Hutchcraft v. Independent Mechanical Industries, Inc.*, 312 Ill. App. 3d 351, 354, 726 N.E.2d 1171, 1174 (2000). Further, the court is vested with wide discretion in granting or denying extensions of time to file pleadings or motions. See 735 ILCS 5/2-1007 (West 2010); Ill. S. Ct. R. 183 (eff. Feb. 16, 2011). Here, the court had discretion to grant defendants' motions to dismiss plaintiff's amended complaint without allowing plaintiff additional time to respond to the motions. We conclude the trial court did not abuse its discretion by granting defendants' motions to dismiss plaintiff's amended complaint and, thereby, denying plaintiff's motion for an extension of time to respond to defendants' motions.

¶ 38                                    III. CONCLUSION

¶ 39    For the reasons stated, we affirm the trial court's judgment.

¶ 40    Affirmed.