**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 23, 2018[*]
Decided October 31, 2018

**Before**

MICHAEL S. KANNE, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

No. 17-3441

THOMAS POWERS,
　*Plaintiff-Appellant*,

*v.*

JENNIFER BLOCK, *et al.*,
　*Defendants-Appellees*.

Appeal from the United States District
Court for the Central District of Illinois.

No. 4:15-cv-04083

Harold A. Baker,
*Judge*.

**O R D E R**

Thomas Powers, a civil detainee at Rushville Treatment and Detention Facility, believes that he is not receiving proper "sex-offender-specific" treatment for his mental disorder. He contends that, in retaliation for filing grievances and lawsuits objecting to

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. Rule 34(a)(2)(C).

his therapy, the defendants—various clinicians who supply diagnostic and treatment services at the facility—collectively withheld appropriate treatment and placed him on suicide watch. The district court entered summary judgment against Powers, concluding that he had not created a genuine dispute about the adequacy of his treatment or provided sufficient evidence of retaliatory motive. We affirm.

At Rushville, trained professionals have offered Powers group therapy to treat his mental disorders. The treatment requires him to acknowledge his deviant behavior to the group and listen to feedback from other residents and his providers. Throughout his three years at Rushville preceding this lawsuit, however, Powers has disagreed with feedback he has received and the assessments of his behavior and mental state.

Powers stresses that he just wants to complete Rushville's treatment program and be "cured," but the defendants simply will not let him. At the same time, Powers has pending a civil commitment hearing to determine whether he is a "sexually violent person" as defined by Illinois's Sexually Violent Persons Commitment Act, 725 ILCS 207/1–99. In an affidavit, he disputed his diagnosis as "not valid" and maintained he was "not a sexually violent person." He admits, however, that he has been diagnosed with a "paraphilic disorder non-consent," and he previously has been incarcerated for attempted aggravated criminal sexual assault and aggravated unlawful restraint. He believes that the defendants deny him appropriate treatment for his diagnosis.

Regarding his participation in Rushville's program, his primary therapists and group facilitators have consistently noted that he tries to use group sessions as a forum for discussing legal issues and the validity of his diagnosis. In November 2014, Powers participated in an "entry to treatment evaluation" performed by defendant Jennifer Block, a licensed clinical psychologist with a Ph.D. in psychology. During the assessments, Powers denied committing his underlying sex offense and tried to steer the conversation toward whether he met the diagnostic criteria for commitment.

Powers's retaliation claim stems in part from an incident involving Dr. Block in December 2014. Dr. Block recounts in an affidavit that during one group session, Powers stated that she should "fear" him. Powers maintains that all he said was that he "only fears God." Two days later Dr. Block wrote an incident report stating that Powers threatened her. Although Powers believes that Dr. Block wrote the report in retaliation

for disagreeing with her evaluation, Dr. Block says that facility rules required her to file the report. On the day the report was filed, security staff removed all Powers's property from his room except his underwear and placed him on suicide watch. He ultimately received a warning for "insolence" and was returned to his previous housing status. In affidavits, the defendants all deny they were involved in the decision to place him on suicide watch.

Although Powers has been at Rushville for several years, his mental health providers have not advanced him to the next stage of treatment, which presumably would draw him closer to qualifying for release. Paula Lodge—Powers's treatment team leader, who holds licenses as a clinical psychologist, professional counselor, and a doctorate in clinical psychology—opined in an affidavit that Powers was not prepared to advance to the next phase of treatment because of his demonstrated behavior and resistance to accepting responsibility and feedback. Lodge added that it would be futile to advance Powers to the next treatment group before addressing the aforementioned deficiencies.

Powers brought this suit under 42 U.S.C. § 1983, asserting that the defendants violated his due process rights under the Fourteenth Amendment by denying him adequate, individualized, sex-offender-specific treatment for his diagnosis and by not advancing him in treatment. He characterized his current treatment as a "sham" because it was "non-sex-offender-specific" and contended that the sex-offender- specific therapy occurred only during the next phase of treatment. He also asserted that the defendants retaliated against him for filing grievances and lawsuits, in violation of his First Amendment rights, by withholding proper treatment and placing him on suicide watch. Powers argued that certain defendants—Lodge; his primary therapist Gerald Carreon; and Rushville's clinical director Shan Jumper—retaliated against him by collectively deciding not to advance him. He contended that Dr. Block retaliated against him by filing the December incident report that led to his stint on suicide watch.

The district court entered summary judgment for the defendants. It found that his attacks on the defendants' licensing credentials failed to create a fact question about whether he was receiving adequate treatment decided by professionals. The court also determined that Powers's assertions that (1) he was receiving inadequate, "non-sex-offender-specific" treatment, and (2) that the defendants already should have advanced

him to the next phase of treatment, did not suffice to show that the defendants lacked the necessary professional judgment to provide his sex-offender treatment. As for Powers's retaliation claims, the district court ruled that he failed to provide evidence establishing a connection between his grievances or lawsuits and the decision not to advance him. His contentions relating to Dr. Block's incident report also failed because she had provided a sworn affidavit identifying a non-retaliatory reason for her actions, and Powers did not submit anything that would allow a rational jury to infer that her proffered reason was a lie.

On appeal Powers contends that the district court failed to consider evidence about the defendant's licensing credentials as well as documentary evidence about what constitutes proper sex offender treatment. Powers argues on the basis of admissions from Dr. Block, Carreon, and Jumper that these defendants were not licensed to treat him as required by the Illinois Sex Offender Evaluation and Treatment Provider Act (SOETP), 225 ILCS 109/1–999, which took effect July 1, 2014. He reasons that treating him while unlicensed itself demonstrates an unconstitutional lack of professional judgment.

As the district court found, the record undermines any concern about the defendants' qualifications. In the context of treatment for civil detainees, a "professional" means a "a person competent, whether by education, training or experience, to make the particular decision at issue." *See Youngberg v. Romeo*, 457 U.S. 307, 323 n.30 (1982). All of the defendants have advanced degrees in psychology or a closely related field and hold various licenses to provide mental health treatment. Furthermore, Lodge received her license before the licensing requirements went into effect and supervised Carreon and Dr. Block while they were unlicensed. Jumper, as the clinical director, did not directly treat Powers but any question about his professional judgment is quelled by his nearly twenty years of experience working in Illinois's treatment and detention facilities. Given the defendants' relevant credentials and experience, a reasonable jury could not accept Powers's contention that the defendants lacked professional judgment in providing treatment for his paraphilic disorder.

Next, Powers argues that the district judge overlooked his evidence about what constitutes proper sex-offender treatment. He explains that in *Kansas v. Hendricks*, 521 U.S. 346 (1997), Kansas gave its detainees 31 hours of treatment a week and, therefore,

anything less must be constitutionally inadequate treatment. He also cites the reports of a psychiatrist and an institutional security consultant from another lawsuit in 2003 that criticized the program at Joliet Treatment and Detention Facility, which previously housed Illinois's detainees.

These contentions fail to establish a genuine dispute about the defendants' treatment decisions or the adequacy of Powers's care. Choices made by a professional about a civil detainee's treatment, the Supreme Court has held, are "presumptively valid." *See Youngberg*, 457 U.S. at 323. Applying *Youngberg* in the context of civilly detained sex offenders, we have stated that the Constitution requires only that "(a) committed persons are entitled to some treatment, and (b) what that treatment entails must be decided by mental-health professionals." *See Allison v. Snyder*, 332 F.3d 1076, 1081 (7th Cir. 2003). That Kansas may provide 31 hours of treatment to sex offenders does not raise an inference that Illinois's treatment program is constitutionally deficient because it does not show that his treatment was decided by non-professionals. *See id.* As for the fifteen-year old expert reports, Powers does not specify what opinions are contained in them nor does he otherwise explain their relevance.

Turning to the district court's determination that he had not provided any evidence to demonstrate that his treatment was inadequate, Powers argues that the judge should have credited his sworn statement that his "sex offender specific" treatment lasts only forty-five minutes every four to five weeks. Along these lines, he says the judge overlooked four affidavits from Rushville residents concurring that their treatment is "not adequate."

But decisions made by competent treatment providers violate the Constitution only if they show "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Youngberg*, 457 U.S. at 323. Powers fails to explain why his opinion or that of the other residents should override the judgment of Rushville's professionals or how these statements otherwise reflect a departure from professional judgment, practice, or accepted standards. A reasonable jury could not find for Powers based on mere dissatisfaction with his treatment.

Powers next suggests that the district judge ignored evidence that shows a connection between his lawsuits and the defendants' retaliatory motives. He points to a series of emails between Rushville staff members that includes a disparaging reference to him and another resident in the facility's law library.

This argument relies on too tenuous a connection between the defendants and his litigation activity. Apart from one Rushville staff member—not a defendant in this case—commenting about Powers's right to access legal materials, the emails are a benign description of facility policy that Jumper merely forwarded to a group including the other defendants. The derogatory remark came after Jumper's initial action. Powers fails to show a link between the emails, his grievances or litigation, and the adequacy or progress of his treatment. Based on this degree of speculation, a reasonable jury could not conclude that the defendants possessed the requisite retaliatory motive. *See Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012).

Powers contends that the district court could have drawn reasonable inferences in his favor about Dr. Block's motive to retaliate from letters he wrote to Dr. Block disputing her evaluation of him. He also submits that the two-day delay before Dr. Block filed the report that led to his placement on suicide watch was suspicious and inconsistent with her charge that he threatened her.

We agree with the district court that this evidence failed to preclude summary judgment. Circumstantial evidence, such as suspicious timing or behavior, may signal retaliation, but the adverse action must "follow[] close on the heels of protected expression." *Kidwell*, 679 F.3d at 966 (quoting *Lalvani v. Cook Cty.*, 269 F.3d 785, 790 (7th Cir. 2001). Powers did not send letters disputing Dr. Block's findings until after he was placed on suicide watch, so he cannot show the requisite connection between his complaints and the disciplinary action. As for the two-day delay between the incident and Dr. Block's report, "suspicious timing alone rarely is sufficient to create a triable issue." *See Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 851 (7th Cir. 2008) (quoting *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 662-63 (7th Cir. 2006)). Therefore, the fact that Dr. Block waited two days to file the incident report, without more, does not suffice to create a genuine dispute about her motives.

Finally, we consider Powers's two procedural challenges. Powers asserts, first, that the court erred by not appointing an expert to determine the efficacy of Rushville's treatment program. Finding that an expert was unnecessary for Powers to show retaliation or the inadequacy of his treatment, the court denied his request on grounds that Powers in fact was asking for the court to determine his Fourteenth Amendment claim under the guise of a Daubert hearing. Powers rehashes his argument that a hearing and experts are needed to assess his treatment and the defendants' judgments. We agree that the district court was not required to recruit an expert to act as an advocate on Powers's behalf because, although a court may appoint an expert to help sort through conflicting evidence, matters such as retaliation or treatment conditions can be understood by a layperson without any need for an expert.

Powers's second procedural challenge is not well developed. He asserts without elaboration that the court should have recruited counsel for him because he has a diagnosed mental disorder. He maintains that his mental disorder and inability to move forward in Rushville's treatment program demonstrate that he is not competent to litigate this case without an attorney. But the district court reasonably denied his requests for counsel because he appeared capable of handling the litigation himself: his pleadings were cogent, he survived the district court's initial screening evaluation of the written complaint, *see* 28 U.S.C. § 1915(e)(2), and he was able to engage in the discovery process. *See Pruitt v. Mote*, 503 F.3d 647, 658 (7th Cir. 2007).

AFFIRMED