In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 16-3927 & 16-4037

EDWARD TOBEY,

*Plaintiff-Appellant/Cross-Appellee*,

*v.*

BRENDA CHIBUCOS and MARY
STANTON,

*Defendants-Appellees/Cross-Appellants.*

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:16-cv-03962 — **Samuel Der-Yeghiayan**, *Judge.*

ARGUED NOVEMBER 28, 2017 — DECIDED MAY 15, 2018

Before BAUER, ROVNER, and SYKES, *Circuit Judges*.

ROVNER, *Circuit Judge.* One man's extradition is another
man's "kidnapping." Edward Tobey, the plaintiff here, has
three state-court convictions (one in Illinois and two in Florida)
for possession of child pornography. Tobey also has a pen-
chant for resisting the conditions of probation placed upon him

by courts and by his probation officer. In 2013, his tussles with those in authority led to an uncomfortable prison transport ride from Illinois to Florida, followed by more than 106 days in a Florida jail. In 2016, he brought federal and state claims against his probation officer and an assistant state's attorney for this purportedly unwarranted "kidnapping." The defendants responded with a motion to dismiss and a request for sanctions. The district court dismissed Tobey's claims but denied the sanctions. Both sides appealed. We affirm the judgments in both appeals.

## I.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, (2007)). Although we must accept as true the well-pleaded factual allegations in the complaint, *see Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008), we do not credit legal conclusions, or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. Sometimes, a litigant "makes our task of suspending credibility determinations difficult by lodging some fairly outrageous accusations." *Payne v. Pauley*, 337 F.3d 767, 771 (7th Cir. 2003). As will be apparent shortly, this is one of those cases. Much of Tobey's version of the facts is belied by certified court records. Because the appeal comes to us from the grant of a motion to dismiss for failure to state a claim, we must "be true to our task" and draw our recitation of the facts from the well-pleaded allegations of the complaint, however improbable they may seem. *Payne*, 337 F.3d at 771.

In 2009, Tobey placed an order for two videos from an internet site advertising "videos of young girls." R. 1-1, at 3. When the videos arrived at Tobey's Florida home, he signed for them and was immediately arrested by U.S. Postal Inspectors as part of a sting operation. Tobey's arrest for receipt of the videos led to searches of his computers in his homes in Florida and Lake Bluff, Illinois. Those searches led to the discovery of "downloads" on both computers that eventually led to charges in both states.[1] Tobey pled guilty to Florida charges for possession of child pornography related to the videos on April 1, 2010. He was sentenced to four months' imprisonment and four years of probation. He was subsequently charged with possession of child pornography related to the images downloaded to his Florida computer. He pled guilty to those charges on September 1, 2011, and received a sentence of eight months' imprisonment and a period of probation extending to 2020.[2] In March 2012, when Tobey finished serving his Florida prison sentences, he returned to Illinois where he again pled guilty to

---

[1] Although Tobey's twenty-six page, one hundred and forty-five paragraph complaint never identifies the charges to which he pled guilty in both states, the euphemistically pled "videos of young girls" and the "downloads" to his computers were not innocuous materials. Documents that he attached to his complaint make patent all that is implied in Tobey's complaint: the videos that he purchased and the images that he downloaded consisted of child pornography.

[2] Other parts of the record, including undisputed Florida court orders setting the terms of probation, suggest that Tobey's Florida probation will last until 2032. This unresolved factual issue is immaterial to the appeal, however, because there is no question that Tobey was on probation at the time of the events referenced in the complaint.

possession of child pornography, this time for images discov-
ered on his Illinois computer. Defendant Mary Stanton, an
Assistant State's Attorney, served as the prosecutor on Tobey's
Illinois case. A Lake County, Illinois judge sentenced Tobey to
two and a half years of probation.

At Tobey's request, supervision of his Florida probation
was transferred to Illinois through the Interstate Compact on
Adult Offender Supervision.[3] Defendant Brenda Chibucos, a
Lake County probation officer, was assigned to supervise
Tobey for both his Florida and Illinois probation periods. One
condition of probation required Tobey to attend psychological
group sessions. Probationers were expected to continue to
attend these sessions until they successfully completed
polygraph tests administered by the probation office. Failing
to pass a polygraph resulted in the imposition of additional
conditions of probation. This turned out to be a problem for
Tobey.

Tobey attached to his complaint a June 22, 2014 report from
the therapist who provided to him sex offender specific
services, including individual and group therapy. According
to the therapist, in four attempts (July 2012; September 2012;
January 2013; and February 2014) to pass a sexual history
polygraph, Tobey had failed or provided "inconclusive"
answers every time. Tobey had successfully passed a "mainte-

_____

[3] All fifty states participate in the Interstate Compact on Adult Offender
Supervision ("ICAOS"), which governs the interstate transfer of supervision
of persons serving a period of probation. Florida joined the ICAOS in 2000,
and Illinois signed on in 2002. *See* www.interstatecompact.org (last visited
May 11, 2018).

nance" polygraph, demonstrating that he was capable of passing a polygraph despite his claims of anxiety. The therapist noted that Tobey admitted extensive use of pornography but denied "intentional use of child pornography," even though he pled guilty three times to possession of child pornography. The therapist also observed that Tobey explained his failures by claiming "a lack of clarity in his memory" on specific issues "including certainty about the age of prostitutes in the Philippines and the age of models in his extensive history of pornography use." R. 1-2, at 2. Tobey completed five therapy sessions to work on clarifying his sexual history and was poised to "make one last attempt" to pass the sexual history polygraph at the time of the report. Because of these issues, the therapist recommended a six month extension of sex offender specific services.

In early 2013 (around the time of Tobey's third polygraph failure), Chibucos demanded that Tobey sign a "behavioral agreement." In a March 21, 2013 meeting with Chibucos and two therapists, Tobey refused to sign the proposed agreement until his attorney reviewed it. According to the complaint, the behavioral agreement required Tobey to acknowledge that he "had repeatedly failed the sexual history polygraph, had with [sic] minor children, and that he had to pass rules and regulations on 'minor contact' and pornography use." R. 1-1, at 6–7. A review of the proposed agreement, which Tobey attached to his complaint, shows that Tobey mischaracterized the document, and we credit the document over Tobey's characterization of it. The agreement was not with Chibucos but rather with Blain and Associates, the therapy office providing Tobey with sex offender services. The agreement states that it was

proposed due to continued failure of the sexual history polygraph, concerns about not following the rules of probation (including rules related to contact with minors), and overall lack of progress in the program. It required Tobey to pass the sexual history polygraph; involve his significant others in the process as deemed appropriate by his treatment team (by honestly disclosing his offense to them); follow all the rules of probation including restrictions on computer use and contact with minors; and attend an additional five therapy sessions. It warned that failure to meet the terms of the agreement by June 20, 2013 could result in suspension or discharge from the program and the filing of a petition to revoke probation. As we will discuss *infra*, these requirements were perfectly consistent with the conditions of probation imposed by courts in two states.

Tobey also asserted in the complaint that, during this same time period, Chibucos wrote two memoranda to Stanton requesting that she file petitions to revoke Tobey's probation. Both memoranda, which are attached to the complaint, are dated March 18, 2013, but one was filed with the Lake County Court on March 22, 2013 and the second was filed with the same court on April 12, 2013. We will refer to them hereafter by their respective filing dates for clarity. The March 22 memorandum stated that an investigator had discovered that Tobey had internet access on his cell phone in violation of his Illinois and Florida probation conditions, that he was directed to remove that access by March 18, and that he told Chibucos that he was advised by his attorney that he did not have to disconnect internet service. The April 12 memorandum stated that Tobey had failed to cooperate with sex offender treatment

and was suspended from treatment due to problems with cooperation. The April 12 memorandum also repeated the allegations regarding internet access on Tobey's cell phone. Tobey denied in the complaint that he was ever informed that he was suspended from treatment. His complaint is silent on whether he had access to the internet on his cell phone and whether he refused to remove that access in violation of his probation conditions.

We pause for a moment to note that, at this point, the allegations of the complaint depart substantially from the version of events documented in all available public court records. Tobey asserts that the public record is false and that his sworn version of events is true, and so we must credit Tobey's version because his case was dismissed under Rule 12(b)(6). We mention this for two reasons. First, in light of certified court documents, parts of Tobey's version appear highly improbable, and yet because of the posture of the case, we must credit his sworn statements anyway. To the extent that his personal observations differ from the public record, we must resolve those conflicts in his favor on a motion to dismiss. *Sobitan v. Glud*, 589 F.3d 379, 380 n.2 (7th Cir. 2009) (when defendants dispute facts on a motion to dismiss, the facts as alleged by the plaintiff are presumed to be true). *Cf. Watkins v. United States*, 854 F.3d 947, 950 (7th Cir. 2017) (in the absence of a plausible, good-faith basis to challenge the legitimacy of a pleading, the court is entitled to take judicial notice of a complaint and its contents). Granted, the conflict between Tobey's allegations and the certified court record poses a thorny issue. Court records are not invariably accurate and may at least contain typographical errors if not outright

falsehoods. But the issue is not one that we need to resolve because, as we discuss below, Tobey's claims fail on other grounds even if we credit his improbable allegations. Second, we must address the version supported by the public record when we attend to the arguments for sanctions in the district court and on appeal. We return for now to Tobey's version of events.

According to Tobey, on April 15, 2013, he was scheduled for an appointment at the Adult Probation Office to meet with Chibucos regarding his failure to sign the behavioral agreement. He first went to his lawyer's office, but the lawyer was unavailable so he proceeded to the Probation Office. While in the waiting room, he was arrested by two Lake County Sheriff's Deputies and taken to the Lake County jail. Chibucos and Stanton had an agreement, approved by their supervisors, to have Tobey taken into custody and the Sheriff obliged. Four days later, Tobey spoke to his son-in-law, who had spoken to Tobey's criminal defense lawyer. That lawyer told his son-in-law that the Illinois judge who presided over Tobey's criminal case said that Tobey would not be transported to Florida but would be released from custody on April 22.

On April 21, despite what Tobey claims was an order barring his removal from Illinois, and allegedly without any legal process, Tobey was purportedly "kidnapped" from the Lake County jail, shackled and placed in a van, where he remained shackled for three and a half days as he was transported to the Manatee County, Florida jail. During this "rough" ride, Tobey's recent hernia repair began to fail, resulting in a second surgery when he eventually returned to Illinois. Tobey further alleged that, in order to provide legal

cover for Chibucos and in furtherance of an agreement to force Tobey to sign the behavioral agreement, Stanton sent Tobey's attorney an unstamped notice of arraignment dated April 18, 2013, on a Petition to Revoke Probation, for a hearing to be held May 2, 2013. He alleged that Stanton knew that he would be out of the jurisdiction on May 2, having arranged his purportedly involuntary departure. He also alleged that Stanton then sent a file-stamped copy of the notice and the petition to Tobey's lawyer, knowing counsel would not receive the notice until after Tobey was removed from the state, all in furtherance of an agreement between Stanton and Chibucos to provide cover for their illegal coercion of Tobey.[4]

According to Tobey, Stanton remained silent in the face of Tobey's "kidnapping." On May 16, 2013, Stanton and Tobey's criminal defense attorney appeared before the Illinois judge who oversaw Tobey's prosecution and entered an agreed order to return Tobey to Illinois, supposedly pursuant to a previously-issued bench warrant for Tobey's return, although Tobey denied that a bench warrant appeared in the court's file. A June 13, 2013 order attached to the complaint also directed that Tobey be returned to Illinois to appear before that same judge on June 27, 2013. But Stanton allegedly ignored those

---

[4] Tobey asserts in the space of a few sentences both that he has attached a true and correct copy of the notice and petition to his complaint as Exhibit F, and that no petition is attached to the notice. Because there is a petition to revoke attached to the notice that Tobey himself provided, we will assume that the petition was in fact attached. R. 1-1, at 10. It is unclear whether any hearing occurred in Illinois on May 2, but as we discuss below, there were court appearances in both Illinois and Florida related to these events.

orders and made no attempts to secure Tobey's return to Illinois.

Instead, two months later, in August 2013, Stanton and Chibucos sent to Manatee County, Florida, a modified behavioral agreement containing many of the same terms as the agreement Tobey previously declined to sign, and doubling to ten the number of psychological counseling sessions that Tobey would be required to attend at a cost of $40 per session. After consulting with Florida counsel, and believing that he would not be released from the Manatee County jail unless he signed the behavioral agreement, Tobey asserted that he signed the agreement under duress. After signing the agreement, a Florida judge entered an order on a motion of the Manatee County state's attorney dismissing the "violation of probation warrant" against Tobey. Yet according to Tobey:

> There was no violation of probation warrant or any other process justifying [Tobey's] kidnaping and transportation from Illinois to Florida nor for his 106-plus days in custody in Florida.

R. 1-1, at 12. The Florida court ordered Tobey returned to Illinois and he did subsequently return to Illinois after serving more than 106 days in jail purportedly without any legal process authorizing his incarceration. When he returned to Lake County, he claimed he was compelled by the defendants to sign another behavioral agreement, identical to the one he signed in Florida.

His troubles with Chibucos and Stanton continued after his return. Chibucos would sometimes approve his travel out of state and sometimes not. When an Illinois judge approved a

visit to Tobey's home from his adult daughter and her minor child, Chibucos allegedly threatened Tobey with an additional "kidnapping" if she ever obtained evidence that his minor granddaughter visited his Lake Bluff house. Tobey forwent visits with his daughter and granddaughter in fear of another "kidnapping." In June 2014, Stanton again filed a notice and petition to revoke, this time on the grounds that Tobey failed to successfully complete sex offender treatment, wilfully failed to pay court costs and failed to complete 200 hours of public service. Tobey claimed that the court took no action on this purportedly frivolous petition to revoke.

On September 4, 2014, approximately three months after the therapist's report recommending a six-month extension to Tobey's therapy, the court granted Stanton's motion to extend Tobey's Illinois probation six months. The next month, Tobey passed a series of polygraph exams and was then no longer restricted from visiting his daughter.[5] Yet when he asked Chibucos to visit his daughter in Oregon over the 2014 Christmas holiday, she declined to grant permission unless his therapist designated his daughter as his granddaughter's babysitter during the visit. Although Tobey secured the designation from his therapist, Chibucos never granted permission for the visit.

Tobey's Illinois probation terminated in March 2015 but he remained under Chibucos's supervision for his Florida probation. In May of that year, she granted him permission to

---

[5] As we will discuss below, according to undisputed court probation orders, passing the polygraph was not alone sufficient to remove the restrictions on contact with minors.

travel to Texas and Louisiana to visit adult friends. Three months later, he requested permission to visit his daughter in Oregon but Chibucos claimed that she lacked authority to approve the visit and directed him to contact the probation office in Florida. Tobey was not aware that any of the actions taken against him by Chibucos and Stanton were allegedly unlawful until his attorney reviewed his file in March 2016. From March 2012 through the filing of his complaint, he claimed that he remained under threat of incarceration without due process.

On April 1, 2016, Tobey filed a six-count complaint against Chibucos, Stanton and their unnamed supervisors. Count I alleged illegal arrest and detention in violation of the Fourth, Fifth, Eighth and Fourteenth Amendments. In particular, he alleged that he was taken into custody, involuntarily transported to Florida and detained in a Florida jail for 106 days without any legal justification and without any pre-incarceration hearing. Count II alleged that, in violation of due process and his rights under those same Amendments, Chibucos continues to threaten to have Tobey kidnapped and incarcerated again if he visits his granddaughter; wrongfully refuses to approve visits to his granddaughter; and repeatedly files frivolous petitions to revoke his probation. He asserted that Stanton provides legal cover for Chibucos's actions. Count III asserted supervisory liability for the actions of Stanton and Chibucos alleged in the first two counts. Counts IV, V, and VI alleged state law claims for malicious prosecution, intentional infliction of emotional distress and conspiracy.

The defendants moved to dismiss the complaint under Rule 12(b)(6). They also sought sanctions for the filing of a frivolous

complaint. They attached to their motion to dismiss 113 pages of documents consisting largely of file-stamped and certified copies of court records in Illinois and Florida, along with printouts from the public dockets of those courts. The exhibits also contain a small number of letters, emails and fax transmissions. Relying on those documents for a very different version of the facts, and asking the court to take judicial notice of some of the exhibits, the defendants argued that some claims were barred by the statute of limitations, that all of the defendants were entitled to absolute immunity from suit, and that Tobey failed to state any facts supporting a plausible claim.

The district court concluded that Count I was barred by the statute of limitations, and in the alternative, that count failed to state a claim. In reaching the latter conclusion, the court took judicial notice of some of the exhibits to find that Tobey was transported to Florida pursuant to a Florida court order. The court remarked that none of the allegations suggested that Stanton or Chibucos had the legal authority to arrest Tobey or any ability to control what happened to him once Florida authorities took him into custody. The court rejected Tobey's challenges to the authenticity of some of the documents on which the court relied, finding that Tobey provided no legitimate basis for his objection.

On Count II, the court again relied in part on the defendants' version of the facts in concluding that there was no indication that the defendants ordered Tobey's arrest or procured the warrant that led to his removal to Florida. The court also concluded that none of the conduct alleged rose to a level of a constitutional violation. Instead, the defendants' documents suggested that Tobey was represented by counsel

at each stage of the proceedings, and that, in any event, he had waived any objection to extradition when he requested transfer of his probation supervision to Illinois. The court therefore dismissed Count II for failure to state a claim.

Count III met the same fate because Tobey failed to allege any acts personally taken by the supervisors of Chibucos and Stanton, instead offering only speculation that the supervisors approved their actions. Taking a belt-and-suspenders approach, the court also concluded that all of the defendants were entitled to immunity for any actions they took with respect to Tobey. Finally, the court declined to exercise supplemental jurisdiction over the state law claims and dismissed them without prejudice.

In a separate order, the court declined to award sanctions that the defendants sought for the filing of a frivolous complaint. The defendants cited the certified court records that they attached to their motion to dismiss to demonstrate that Tobey's assertions of a lawless kidnapping were false, and to establish that counsel could have easily discovered the truth with simple searches of the dockets of courts in Illinois and Florida. In the face of the motion for sanctions, Tobey and his lawyers continued to insist that Tobey's version of the facts was correct and that the court records were inauthentic or falsified. The district court found that the record lacked sufficient support to show that Tobey and his lawyers acted in a manner inconsistent with Rule 11. Tobey appeals and the defendants cross-appeal.

**II.**

We review *de novo* the district court's decisions to dismiss claims pursuant to Rule 12(b)(6), accepting as true all well-pleaded facts and drawing all reasonable inferences in favor of the non-moving party. *Ball v. City of Indianapolis*, 760 F.3d 636, 642–43 (7th Cir. 2014); *Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008). "Although the statute of limitations is an affirmative defense, dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure is appropriate if the complaint contains everything necessary to establish that the claim is untimely." *Collins v. Village of Palatine, Ill.*, 875 F.3d 839, 842 (7th Cir. 2017).

The parties agree that the statute of limitations for section 1983 actions filed in Illinois is two years. *Liberty v. City of Chicago*, 860 F.3d 1017, 1019 (7th Cir. 2017). Count I alleged that Tobey was kidnapped on April 15, 2013 as he waited to meet with Chibucos. He was placed in a van on April 21, 2013 and arrived in Florida three and a half days later, which would have been approximately April 25, 2013. He was then held in Florida for 106 days. The Florida court ordered his return to Illinois on August 15, 2013. Tobey filed his complaint on April 1, 2016.

The statute of limitations begins to run when the plaintiff has knowledge of the injury and knowledge that the defendant, acting within the scope of his or her employment, may have caused the injury. *Liberty*, 860 F.3d at 1019 (citing *Arteaga v. United States*, 711 F.3d 828, 831 (7th Cir. 2013)). In the case of false arrest and false imprisonment, the limitations period begins to run when the alleged false imprisonment ends.

*Wallace v. Kato*, 549 U.S. 384, 389 (2007). "Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held pursuant to such process—when, for example, he is bound over by a magistrate or arraigned on charges." *Wallace*, 549 U.S. at 389. Tobey asserts that he never received process and that he was never brought before a judge. However, he attached to his complaint the order of the Florida judge who ordered his release on August 15, 2013, and a court may consider that document in deciding a motion to dismiss. *Williamson v. Curran*, 714 F.3d 432, 435–36 (7th Cir. 2013); *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). Even if we credit his allegations that he was never brought before a judge in Illinois or Florida, his purportedly illegal detention ended no later than August 2013, and the limitations period therefore ended in August 2015. Yet he did not file his complaint until April 1, 2016, at least seven months too late.

Tobey argues that he alleged in his complaint that he "did not know that the actions of the defendants, known and unknown, towards him were without process of law until he had counsel view the records relating to his probation in March of 2016." R. 1-1, at 16–17. It is difficult to comprehend Tobey's argument on a factual level because a person who has been "kidnapped" by sheriff's deputies and transported to a jail in another state would know whether he received any legal process along the way. That is, he would know, as a factual matter, if he had been brought before a judge. In fact, Tobey affirmatively declares that he was not brought before a judge, effectively conceding that he knew immediately as a factual

matter that his arrest and imprisonment occurred without legal process.

Tobey may also be suggesting that he did not know that the acts of these government officials were unlawful until his lawyer reviewed his file a few years later. But Tobey's ignorance of his legal rights does not affect the accrual of his claim for statute of limitations purposes. *Massey v. United States*, 312 F.3d 272, 276 (7th Cir. 2002) (claim accrues when plaintiff has knowledge of both the existence and cause of his injury, and not at a later time when he knows that the acts inflicting the injury may constitute malpractice). *See also United States v. Kubrick*, 444 U.S. 111, 122 (1979) (for statute of limitations purposes, a plaintiff's ignorance of his legal rights and ignorance of the fact and cause of the injury do not receive equal treatment). "A plaintiff … armed with the facts about the harm done to him, can protect himself by seeking advice in the … legal community. To excuse him from promptly doing so by postponing the accrual of his claim would undermine the purpose of the limitations statute[.]" *Kubrick*, 444 U.S. at 123. *See also Gekas v. Vasiliades*, 814 F.3d 890, 894 (7th Cir. 2016) (federal law governs the accrual date for section 1983 claims, which is when the plaintiff knows or should know that his or her constitutional rights have been violated). Tobey had all of the knowledge he needed to file a claim as of August 2013. His failure to investigate his legal rights for more than two more years does not postpone the accrual of his claim. *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 992–93 (7th Cir. 2002) (a statute of limitations begins to run once a plaintiff has knowledge that would lead a reasonable person to investigate the possibility that her legal rights have been infringed).

Tobey finally argues that he is entitled to equitable tolling because (1) the defendants engaged in continuing violations of his rights and (2) despite all due diligence, he did not learn vital information bearing on the existence of his claim until March 2016 when he went to the Lake County Clerk's Office and examined the record. We have already addressed his second argument: Tobey possessed all of the information necessary to file his claim as of August 2013, and his ignorance of the legal significance of that information does not toll his claim. As for the continuing violation doctrine, Count I pleads a discrete incident that occurred in a defined time frame that ended in August 2013. "The continuing violation doctrine is … applicable when the state actor has a policy or practice that brings with it a fresh violation each day." *Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006). *See also Clark v. City of Braid-wood*, 318 F.3d 764, 767 (7th Cir. 2003) (under federal law, the continuing violation doctrine does not save an otherwise untimely suit when a discrete incident of unlawful conduct gives rise to continuing injuries because the plaintiff can bring a single suit based on an estimation of total injuries); *CSC Holdings*, 309 F.3d at 992 (equitable tolling operates until the plaintiff knew or by reasonable diligence should have known of both the injury and its governing cause). Although Count II purports to allege a continuing violation of his rights, Count I is focused on a specific incident that ended more than two years before Tobey filed his complaint. The continuing violation doctrine simply does not apply to Count I. The district court correctly concluded that Count I is barred by the statute of limitations.

**III.**

In Count II, Tobey pled that: (1) Chibucos repeatedly threatened and continues to threaten to have Tobey kidnapped and removed to Florida again if he visits his granddaughter; (2) Chibucos refused and continues to refuse to permit Tobey to visit his granddaughter in Oregon, falsely claiming a lack of jurisdiction over his requests; and (3) Stanton gave and continues to give cover of law to Chibucos's illegal acts by filing petitions to revoke probation and a motion to extend probation. Tobey again alleged in Count II that he had no basis for knowing that the defendants' acts were illegal until he reviewed court documents in March 2016.[6]

In an argument encompassing both Counts I and II, Tobey asserts on appeal that the district court erred in relying on the documents supplied by the defendants in their motion to dismiss. He contends that a court may not rely on such documents without converting the motion to dismiss to a motion for summary judgment. Moreover, Tobey:

---

[6] To the extent that the past threats and past conduct of Chibucos and Stanton alleged in Count II occurred more than two years prior to the filing of the complaint, those claims were properly dismissed on statute of limitations grounds as we explained above. Tobey did not plead particular dates in this count, and the analysis which follows must necessarily address only conduct that was alleged to have taken place within the two years prior to the filing of the complaint. That conduct consists entirely of threats to remove him to Florida if he visits his minor granddaughter, refusals to approve visits with his minor granddaughter, and the provision of "legal cover" for these threats and refusals.

> challenges the accuracy of defendants' documents,
> such as those purporting to show plaintiff in court
> before another judge without any transcript of the
> proceedings and where plaintiff states from the time
> of his arrest to his return from Florida over 106 days
> later he never appeared before a judge, and further
> asserts that some of the documents misrepresent
> what actually occurred.

Brief of Appellant, at 26. Tobey maintains that he was taken into custody on April 15, 2013, not on April 22, the date documented in court records produced by the defendants. He contends that, contrary to the assertions in the documents produced by the defendants, he was not brought before a judge when he was taken into custody in Lake County, nor did he see a judge during his Florida incarceration, including at the time of his release. He also attacks the defendants for claiming "without foundation, that plaintiff was represented by counsel throughout all events." Brief of Appellant, at 27. He casts doubt on the validity of a Florida warrant that the defendants attached to their motion to dismiss, and generally attacks the validity of several of the documents submitted by the defendants. Finally, he argues that, in dismissing the complaint, the district court ignored the continuing nature of the threats and actions of the defendants.

Although a court may generally take judicial notice of public records, under Federal Rule of Evidence 201, a court may judicially notice only a fact that is not subject to reasonable dispute. *White v. Hefel*, 875 F.3d 350, 358 (7th Cir. 2017); *Olson v. Champaign County, Illinois*, 784 F.3d 1093, 1097 n.1 (7th Cir. 2015) (as "a general rule, we may take judicial notice of

public records not attached to the complaint in ruling on a
motion to dismiss under Rule 12(b)(6)").

> A motion under Rule 12(b)(6) can be based only on
> the complaint itself, documents attached to the
> complaint, documents that are critical to the com-
> plaint and referred to in it, and information that is
> subject to proper judicial notice. *See* Fed.R.Civ.P.
> 10(c) (written instrument that is exhibit to pleading
> is part of pleading for all purposes)[.] … If a moving
> party relies on additional materials, the motion must
> be converted to one for summary judgment under
> Rule 56.

*Geinosky*, 675 F.3d at 745 n.1. *See also Daniel v. Cook County*,
833 F.3d 728, 742 (7th Cir. 2016) (courts routinely take judicial
notice of the actions of other courts or the contents of filings in
other courts but may take judicial notice of findings of fact
from another court proceeding only if the fact is not subject to
reasonable dispute); *Hennessy v. Penril Datacomm Networks, Inc.*,
69 F.3d 1344, 1354 (7th Cir. 1995) ("In order for a fact to be
judicially noticed, indisputability is a prerequisite."). "Judicial
notice is a powerful tool that must be used with caution."
*Daniel*, 833 F.3d at 742.

The date of Tobey's arrest and whether he was taken before
a judge during these events are matters that are arguably
subject to reasonable dispute and therefore not a proper subject
of judicial notice. Court records, like any other documents,
may contain erroneous information. Tobey, who obviously has
first-hand knowledge of his own arrest, swears under penalty
of perjury that he was arrested on April 15, not April 22, 2013.

Tobey also asserts under penalty of perjury that he was never taken before a judge at any time after his arrest, prior to his removal to Florida, or after his arrival in a Florida jail. He contends that court records to the contrary are incorrect or have been falsified. Tobey's sworn account of events to which he was a personal witness provides a plausible, good-faith basis to challenge the legitimacy of those documents. *Watkins*, 854 F.3d at 950. Because his assertions contradict certified court records from two different states, we note again the improbability of Tobey's version of events, but it was neither proper nor necessary to rely on the defendants' documents to resolve genuinely disputed facts (such as the date of the arrest and whether Tobey was brought before a court) in order to dismiss Count II.

That is not to say that a court must ignore all of the documents that the defendants attached to their motion to dismiss. As we noted, a Rule 12(b)(6) motion may be based, in part, on documents that are critical to the complaint and referred to in it as well as information properly subject to judicial notice. *Geinosky*, 675 F.3d at 745 n.1. The defendants attached to their motion two Florida Orders of Sex Offender Probation and one Illinois Order and Certificate of Felony Probation, all file-stamped by those courts and bearing indicia of reliability (including a certification of authenticity in the case of the Illinois document). R. 11-2, Exs. A, C and F. Tobey's complaint contains innumerable references to the fact of his probation and the conditions set by judges in two states. He has not challenged the authenticity of these particular documents or the conditions of probation set forth in the courts' orders. In these circumstances, the conditions of probation set forth in

these documents are subject to judicial notice. *See Daniel*, 833 F.3d at 742.

In addition to standard conditions of probation, each court imposed additional constraints relevant to the circumstances of Tobey's crimes. For example, the Illinois court ordered an "open mandate as directed by probation" for Tobey to undergo medical or psychiatric treatment. The Illinois court also ordered that Tobey's probation be assigned to the Sex Offender Unit, that he comply with all of the rules of that unit, and that he was prohibited from all "internet usage unless approved/monitored - except for work purposes[.]" The Florida orders also prohibited internet access but under slightly different terms. Tobey was not allowed internet access "until a qualified practitioner in the offender's sex offender treatment program, after a risk assessment is completed, approves and implements a safety plan for the offender's accessing or using the internet or other computer services." The Florida order further forbade contact with children under the age of eighteen except for supervised visits that could be approved by the court after a recommendation from a qualified practitioner who had conducted a risk assessment, and only if Tobey was undergoing or had successfully completed a sex offender therapy program. Florida also required successful completion of polygraph exams as part of his treatment program. As Tobey himself pled, Illinois also required that he participate in psychological group therapy sessions and that he pass poly-

graph exams administered by probation officers as part of his
sex offender treatment program.[7]

In the context of those undisputed court orders, we con-
sider the allegations of Counts I and II and must conclude that
the defendants were entitled to immunity from suit. Prosecu-
tors and probation officers are absolutely immune from suits
challenging conduct intimately associated with the judicial
phase of the criminal process. *Van de Kamp v. Goldstein*, 555 U.S.
335, 340–41 (2009) (prosecutors); *Imbler v. Pachtman*, 424 U.S.
409, 430 (1976) (prosecutors); *Dawson v. Newman*, 419 F.3d 656,
662 (7th Cir. 2005) (parole officers); *Copus v. City of Edgerton*,
151 F.3d 646, 649 (7th Cir. 1998) (probation officers). Illinois
courts follow the federal law on absolute immunity. *See Frank
v. Garnati*, 989 N.E.2d 319, 320–21 (Ill. App. Ct. 2013); *White v.
City of Chicago*, 861 N.E.2d 1083, 1088–94 (Ill. App. Ct. 2006).

A careful review of the complaint reveals that Tobey
accuses Stanton of nothing more than filing motions with the
court to extend his probation date and to revoke his probation,
and setting hearing dates to accomplish those goals. Although
he suggests that Stanton's motives were to provide cover for

---

[7] The first Florida order was entered May 12, 2010 and provided a term of
120 days of imprisonment followed by four years of probation to run
concurrently on each of two counts. The second Florida order was entered
on September 1, 2011 and ordered an additional 144 days of imprisonment
followed by four consecutive five-year terms of probation, for a total of
twenty years of probation. The Illinois order was entered on January 27,
2012, and provided for a sentence of thirty months' probation, which was
subsequently extended six months. Tobey was thus subject to the Florida
conditions of probation during the entire period of the events set forth in
the complaint. He was subject to the Illinois conditions until March 6, 2015.

unlawful actions by Chibucos, her motives are irrelevant to the absolute immunity question when the actions she is accused of taking are intimately associated with the quasi-judicial phase of the criminal process. *Archer v. Chisholm*, 870 F.3d 603, 612 (7th Cir. 2017) (prosecutors are absolutely immune for actions they undertake in their capacities as prosecutors, even including malicious prosecution unsupported by probable cause); *Doermer v. Callen*, 847 F.3d 522, 530 (7th Cir. 2017) (prosecutors and officials who fill quasi-judicial and quasi-prosecutorial roles are entitled to absolute immunity from damages stemming from many of their official acts, no matter how erroneous or harmful). Probation and parole officials are entitled to absolute immunity "for their activities that are analogous to those performed by judges." *Dawson*, 419 F.3d at 662; *Wilson v. Kelkhoff*, 86 F.3d 1438, 1444 (7th Cir. 1996). "These include, for example, acts associated with the decision to grant, revoke, or deny parole, or the signing of an arrest warrant." *Dawson*, 419 F.3d at 662. *See also Smith v. Gomez*, 550 F.3d 613, 619 (7th Cir. 2008) (parole officer and supervisor entitled to absolute immunity for placing a "parole hold" on plaintiff); *Walrath v. United States*, 35 F.3d 277, 281 (7th Cir. 1994) (parole board members are absolutely immune from suit for their decision to grant, deny, or revoke parole); *Thompson v. Duke*, 882 F.2d 1180, 1184–85 (7th Cir. 1989) (parole board members are entitled to absolute immunity not only for the actual decision to revoke parole but also for activities that are part and parcel of the decision process, including scheduling a hearing); *Hamilton v. Daley*, 777 F.2d 1207, 1213 (7th Cir. 1985) (probation revocation is a criminal proceeding, and prosecutors are absolutely immune from suit for acts taken in initiating a probation

revocation proceeding). Stanton enjoys absolute immunity for the conduct alleged in both Counts I and II.

Similarly, Tobey accuses Chibucos of demanding that he sign a behavioral agreement, filing memoranda with Stanton requesting the revocation of his probation, and continuing to warn him of the consequences of his failures to follow court-ordered conditions of probation. Asking a probationer to adhere to conditions of probation, warning him of the consequences if he fails to do so, and filing requests for revocation are not violations of section 1983; they are the job description for the often thankless job of probation officer. Moreover, in filing the memoranda requesting that the state's attorney begin proceedings to revoke probation, Chibucos was engaged in a quasi-judicial function for which she is protected by absolute immunity. *Dawson*, 419 F.3d at 662; *Smith*, 550 F.3d at 619; *Walrath*, 35 F.3d at 281. This absolute immunity extends to all of Chibucos's conduct in Count I and some of the conduct alleged in Count II.

Absolute immunity does not, however, extend to day-to-day duties in the supervision of a parolee or investigating and gathering evidence for revocation. *Dawson*, 419 F.3d at 662. *See also Archer*, 870 F.3d at 612–13 (absolute immunity does not shield prosecutors from liability for actions that are not intimately associated with the judicial phase of the criminal process, nor does it apply when they are performing non-prosecutorial actions, such as administrative and investigatory activities). Count II asserts that Chibucos continued to repeatedly warn Tobey that he would be returned to Florida if he visited his granddaughter without approval, and that Chibucos repeatedly refused to allow those visits, at least in

part claiming that she lacked jurisdiction to approve the visits. We again look to the undisputed Florida court orders setting forth the conditions of Tobey's probation. Chibucos was correct that Tobey's probation could and likely would be revoked if he visited his minor granddaughter without following the terms set forth in the Illinois and Florida court orders. And Chibucos, in fact, had no authority personally to grant or deny visits under the terms of the Florida probation orders. Those orders require approval from a Florida court before Tobey may have a supervised visit with a minor, and only after certain conditions are met. These particular allegations in Count II do nothing more than accuse Chibucos of performing her duties as a probation officer pursuant to a court order, and therefore this part of Count II does not state a claim under section 1983.

Moreover, federal courts are required by *Younger v. Harris*, 401 U.S. 37 (1971), to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings. *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423, 431 (1982); *Village of DePue, Ill. v. Exxon Mobil Corp.*, 537 F.3d 775, 783 (7th Cir. 2008). Tobey's Florida probation is ongoing and extends at least to 2020 and possibly to 2032. To the extent that Tobey asks this court to take action against Chibucos, an Illinois probation officer supervising a Florida probationer under the interstate compact, for her *continuing* acts of supervision, Tobey is asking this court to interfere with an ongoing state matter. *Sarlund v. Anderson*, 205 F.3d 973, 975 (7th Cir. 2000) (section 1983 claims may be barred by *Younger* abstention when a plaintiff seeks to derail an ongoing probation revocation proceeding). As the

district court noted, if Tobey has a problem with how his probation officer is treating him, he may easily lodge his objections in the state court overseeing his probation. Federal courts generally may not intervene in ongoing state criminal proceedings.

Finally, Tobey complains that he was coerced into signing a behavioral agreement, was ordered to give up internet access on his phone and is subject to continued refusals to visit his granddaughter. Based on the undisputed Florida and Illinois probation orders, these are all court-ordered conditions of Tobey's probation. If Tobey is seeking release from the conditions of probation imposed on him by the courts, a petition for a writ of *habeas corpus* is the appropriate vehicle for seeking relief, not a lawsuit for damages under section 1983. *Williams v. Wisconsin*, 336 F.3d 576, 579–80 (7th Cir. 2003). The restrictions that make up probation are considered a type of confinement rather than conditions of confinement. *Williams*, 336 F.3d at 579; *Drollinger v. Milligan*, 552 F.2d 1220, 1224–25 (7th Cir. 1977). The restrictions that Tobey challenges define the perimeters of his confinement. If he wishes to challenge the imposition of these conditions, he must do so in a *habeas* proceeding after exhausting his state court remedies.

In short, Count I is barred by the statute of limitations. Counts I and II are also barred by claims of immunity. The continuing conduct claims in Count II also fail to state a claim, and in any case are subject to *Younger* abstention. Having determined that Counts I and II may not proceed, it is easy to affirm the dismissal of Count III, which seeks liability for those persons supervising Stanton and Chibucos when they committed the acts alleged in the first two counts. Because Count III

depends entirely on the liability of Stanton and Chibucos under Counts I and II, Count III must necessarily be dismissed. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (jury verdict in favor of defendant police officer for purported constitutional injury to plaintiff was also conclusive as to city and police board where they were sued on a theory that they were liable for police officer's conduct); *Hart v. Mannina*, 798 F.3d 578, 596 (7th Cir. 2015) (where court properly dismissed section 1983 claims against police officers, claims against supervisors also fail); *Hamilton*, 777 F.2d at 1213 n.5 (because absolute immunity protects prosecutorial decisions, supervision of the prosecutors who make these decisions is similarly immune).

The district court declined to exercise supplemental jurisdiction over the remaining state law claims for malicious prosecution, intentional infliction of emotional distress and conspiracy, pled in Counts IV, V and VI, respectively. Generally, we review for abuse of discretion a district court's decision not to exercise supplemental jurisdiction over a plaintiff's state-law claims. *Hagan v. Quinn*, 867 F.3d 816, 820 (7th Cir. 2017). Tobey does not argue that the district court mischaracterized these claims as being raised under state rather than federal law, and has not specifically challenged the district court's decision not to exercise supplemental jurisdiction. We may therefore summarily affirm. His arguments regarding Counts IV, V, and VI are perfunctory and undeveloped and are thus waived. *Sutterfield v. City of Milwaukee*, 751 F.3d 542, 553 (7th Cir. 2014). We affirm the judgment dismissing the complaint in its entirety.

**IV.**

The defendants moved for sanctions in the district court under Federal Rule of Civil Procedure 11. The district court declined to grant them, and we review that decision for abuse of discretion. *Northern Illinois Telecom, Inc. v. PNC Bank, N.A.*, 850 F.3d 880, 883 (7th Cir. 2017); *Cooney v. Casady*, 735 F.3d 514, 518 (7th Cir. 2013). The defendants asserted that there were obvious statute-of-limitations problems with the key claims, that publically available court records contradict most of Tobey's key factual assertions, and that his attorneys failed to conduct a reasonable investigation prior to filing the action. Although a court must credit the well-pled allegations of the complaint when deciding a motion under Rule 12(b)(6), we are not so confined when considering a motion for sanctions. The district court was (and this court is) free to consider the public court records cited by the defendants at this stage, and we now turn to the much more likely sequence of events that led to this suit.

Court dockets in Illinois and Florida show that an extradition action was initiated against Tobey in Lake County, Illinois, in April 2013. The process began when Chibucos shared Tobey's probation violations with her Florida counterpart, Andrew Lanzing.[8] He, in turn, filed a sworn and notarized

---

[8] A receiving state is required to notify the sending state of an act or pattern of behavior requiring retaking within thirty calendar days of discovery by submitting a violation report. *See* Rule 4.109 of the ICAOS Rules, which can be found under the "Legal" tab at https://www.interstatecompact.org/midwest/illinois (last visited May 11, 2018). The Rules have the force and

(continued...)

"Affidavit Violation of Probation" with the Circuit Court in and for Manatee County, Florida, leading to a Florida judge issuing an April 18, 2013 warrant for Tobey's arrest. On the same day that warrant was issued, Stanton filed a Petition for Revocation in the Circuit Court of Lake County, Illinois. But before the Illinois Petition could be heard, Tobey had been arrested at the request of Florida authorities on April 22 (not on April 15 as he alleged, and as we were obligated to credit on the Rule 12(b)(6) motion), and the process of removing him to Florida had begun. The certified court records include the Florida arrest warrant, and references to court appearances by Tobey and his lawyer in Illinois on April 23, within twenty-four hours of his arrest. Florida dockets show that he was represented by a different lawyer in Florida proceedings and that she waived her client's personal appearance at arraignment and all pre-trial hearings. The records also include Tobey's signature on his "Offender's Request for Interstate Compact Transfer," signed January 9, 2012. In that document, he agreed to return to the sending state (in this case, Florida) when ordered to do so by either the sending or receiving state (Illinois), agreed not to resist any effort to return him to the sending state, and waived any constitutional right he had to extradition.[9]

---

[8] (...continued)

effect of statutory law and are binding in the compacting states. *Id*. Illinois is a compacting state. 45 ILCS 170/5.

[9] *See* Rule 3.109 of the ICAOS Rules. An ICAOS Advisory Opinion interpreting that Rule holds that, in seeking a compact transfer of supervi-

(continued...)

The records that Tobey himself attached to his complaint reveal that a surveillance officer discovered in March 2013 that Tobey had internet access on his cell phone in violation of the conditions of probation of both Illinois and Florida. When directed to disconnect that internet access, Tobey declined, saying that his attorney told him that he did not have to comply. By Tobey's own admissions in his complaint, after being told that he had failed the sexual history polygraph multiple times, he refused to sign the proposed behavioral agreement with his therapists unless his attorney approved it. In other words, Tobey's own complaint supplies extensive facts supporting the lawful revocation of his probation. Chibucos was not only *allowed* to share this information with her Florida counterpart; she was *required* by the interstate compact to do so. Once Tobey was removed to Florida for revocation proceedings in that state, Chibucos and Stanton had no control over the Florida proceedings (or lack of proceedings, as Tobey has claimed).

Tobey's response to much of this in the district court and on appeal has been to double down on the claims he made in his verified complaint,[10] namely, that he was arrested a week

---

[9] (...continued)
sion, an offender accepts that a sending state can retake him or her at any time and that formal extradition hearings would not be required.

[10] Although the Federal Rules of Civil Procedure do not require it in this instance, Tobey filed a verified complaint. *See* Fed. R. Civ. P. 11 ("Unless a rule or statute specifically states otherwise, a pleading need not be verified or accompanied by an affidavit."). *But see also* Fed. R. Civ. P. 23.1(b)

(continued...)

before court documents indicate and that court records are mistaken or falsified.[11] He corroborates this claim with a

---

[10] (...continued)

(requiring a verified complaint for shareholder derivative suits); Fed. R. Civ. P. 65(b)(1) (requiring a verified complaint when requesting a temporary restraining order without notice to the adverse party). Tobey attached a signed "Verification" statement to the complaint "declar[ing] under penalty of perjury under the laws of the United States of America that the facts stated in the foregoing complaint are true and correct to be [sic] the best of my knowledge, information, and belief." R. 1-1, at 27. *See* 28 U.S.C. § 1746 (setting forth the proper form for unsworn declarations under penalty of perjury). "[A] verified complaint is not just a pleading; it is also the equivalent of an affidavit for purposes of summary judgment, because it contains factual allegations that if included in an affidavit or deposition would be considered evidence, and not merely assertion." *Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017). Federal Rule 11 requires that a pleading be signed by an attorney of record or by a party personally if the party is unrepresented. Tobey's complaint is signed by one of his attorneys, who thereby certified to the court that, among other things, "to the best of [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances … the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]" Fed. R. Civ. P. 11.

[11] In his briefs and at oral argument, Tobey repeatedly asserted that a report from his sex offender therapist that he attached to his complaint contradicts claims by the defendants and demonstrates that Tobey was compliant with the terms of his probation. But that report is dated June 22, 2014, more than a year after Tobey was extradited to Florida, and it has little bearing on whether he was compliant prior to his extradition. In fact, it reveals that he failed three polygraph exams prior to his extradition, failed an additional polygraph after the extradition, and was continuing to deny the "use of child pornography." The therapist ultimately recommended an

(continued...)

calendar entry he had for meeting Chibucos on April 15, and asserts that his criminal defense lawyer, Gregory Nikitas, also had a calendar entry to meet with him that same day, ostensibly to review the behavioral agreement prior to meeting with Chibucos. Nikitas was "unavailable" and Tobey went to the meeting with Chibucos where he was arrested, beginning his odyssey to Florida. He continues to assert that he was never brought before a judge at any time in this process and that unspecified documents do not accurately reflect what happened to him. He also cites the order of the Florida court (attached to his complaint) that eventually resulted in his return to Illinois as evidence that he was wrongfully removed to Florida.

That document, titled "Order Dismissing VOP Warrant," does very little to support Tobey's version of events. It reveals in its very title that there was a Florida warrant for Tobey's arrest, a fact that he continues to deny on appeal. The Order notes, consistent with the defendants' version of events, that Tobey was on probation in both Illinois and Florida, that he was taken into custody on April 22, 2013 for violating the terms of his probation, that violating Illinois probation triggered a probation violation warrant to be issued in Florida, and that before the Illinois case could be heard, Tobey was "prematurely" transferred to Florida. The Order also observed that the Florida court had ordered Tobey to be returned to Illinois in May 2013 but that procedural issues complicated his return. Because the acts forming the violation of probation occurred in

---

11 (...continued)
additional six months of sex offender services.

Illinois, Florida elected to have the matter first resolved in Illinois, after which the Florida state's attorney planned to revisit the case if necessary.

It appears in part that some of the confusion for Tobey and his civil attorneys regarding the extradition process was caused by the use in Illinois of a separate docket number for extradition proceedings. That is, when the lawyers checked the docket for Tobey's criminal case, they did not find any documents related to his extradition. But the defendants brought the extradition docket to their attention and still Tobey's civil lawyers did not change their position. The district court nevertheless concluded that the public records of Tobey's court proceedings were not sufficient to show that Tobey or his counsel lacked a good faith basis in pursuing the claims asserted. The court noted that Tobey cited additional evidence on which his attorneys relied in filing the suit. A review of Tobey's opposition to the motion for sanctions shows that Tobey planned to present a variety of "proofs" that he was arrested on April 15 and transported to Florida on April 21: a series of contacts with his Illinois criminal defense attorney Gregory Nikitas by Tobey's family between April 15 and April 21; an arrangement by Tobey's son to pick up his car on April 15; records of Tobey's collect calls from the Lake County jail from April 15 to April 21; and the absence of transcripts of court proceedings at the purported extradition hearing on April 23, among other things. Citing this promised (but not yet supplied to the district court or this court) evidence, the district court found that the defendants failed to demonstrate that Tobey's conduct or that of his attorneys rose to the level of a Rule 11 violation.

The defendants, with the full force of the certified public record behind them, are understandably disappointed with the district court's decision. After all, Tobey's factual claims amount to a massive conspiracy against him, perpetrated by his probation officer, polygraph examiner, states' attorneys, judges, docket clerks and court personnel in Illinois and Florida (not to mention sheriff's deputies and a prison transport company, among others). What else could explain the enormous paper trail that contradicts Tobey's claims that he was arrested on April 15 without cause and without process of law and then kidnapped and transported to Florida? Granted, the district court's one-page order rejecting sanctions is thin, but the court cited the correct standard for deciding the question and provided a sufficient explanation to allow for meaningful appellate review. *See Independent Lift Truck Builders Union v. NACCO Materials Handling Group, Inc.*, 202 F.3d 965, 969 (7th Cir. 2000). We uphold any exercise of the court's discretion that could be considered reasonable, even if we might have resolved the question differently. *Yeoman v. Pollard*, 875 F.3d 832, 837–38 (7th Cir. 2017). It was not unreasonable at that stage of the proceedings for the court to conclude that there appeared to be evidence on both sides and that the claims were therefore not brought in bad faith, and we affirm the judgment.

On appeal, however, it is more difficult to understand the continued pursuit of this case by Tobey and his lawyers. Tobey's lawyers are now aware that a vast paper trail, including certified court records, contradicts their client's claims. They are also aware that the extradition proceedings occurred under a different case number. That extradition record in-

cludes an appearance signed by Nikitas on April 23, and docket entries indicating that Tobey and his lawyer appeared in the Lake County court on extradition proceedings on April 23 and April 26. Tobey's civil lawyers have had plenty of time to investigate whether the promised evidence supporting Tobey's story actually exists, whether there are records of collect calls from the Lake County jail between April 15 and April 21, whether Tobey's criminal defense lawyer can back up his story, and whether his family is willing to aver that they communicated with counsel and retrieved Tobey's car between April 15 and April 21. We pressed Tobey's attorneys at oral argument for evidence that Nikitas was not in court with Tobey in Illinois after he was taken into custody in Illinois. They supplied, in a post-argument letter, an exchange of text messages between Tobey and Nikitas on July 5, August 2, and August 3, 2016, three years after the events. Tobey's lawyer confirmed that he had a calendar entry to meet with Tobey at 11 a.m. on May 15 and to meet with Chibucos at 1 p.m. that same day. In response to a text regarding whether Nikitas recalled being in court with Tobey before Judge Collins (the judge who presided over the extradition proceeding) on April 23, 2013, Nikitas responded, "Don't think so. That is not on the clerk's computer." Nikitas appears to have made the same mistake as Tobey's counsel here, failing to check the separate extradition docket. It might have been reasonable to rely on those texts when Tobey's lawyers in this civil case were unaware of the existence of the extradition docket showing copious evidence to the contrary. That reliance is no longer warranted.

It is time for Tobey and his lawyers to demonstrate that there was a good-faith factual and legal basis for putting the defendants and the courts to the trouble and expense of sorting out Tobey's legally complex and factually dubious claims on appeal. We therefore issue a rule to show cause why Tobey and his lawyers should not be sanctioned for filing a frivolous appeal under Federal Rule of Appellate Procedure 38. *Salata v. Weyerhaeuser Co.*, 757 F.3d 695, 701 (7th Cir. 2014) (in order to impose sanctions under Rule 38, we must determine both that an appeal is frivolous and that sanctions are appropriate). In response, Tobey's lawyers should detail all steps they took to investigate Tobey's factual assertions, especially after the obvious problems with his story had been brought to their attention by the defendants, and especially before they filed this appeal. They should also address why they believed that absolute immunity did not shield Stanton in whole and Chibucos in part.

AFFIRMED.