**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted December 20, 2018[*]
Decided January 2, 2019

**Before**

JOEL M. FLAUM, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 17-2596

| | |
|---|---|
| FRANKIE WALKER, SR., *Plaintiff-Appellant*, | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 13-3079 |
| SHAN JUMPER, et al., *Defendants-Appellees*. | Sue E. Myerscough, *Judge*. |

**O R D E R**

Frankie Walker, Sr., who is civilly detained at Rushville Treatment and Detention Center under the Illinois Sexually Violent Persons Act, sued his mental healthcare providers for violating his constitutional rights by conditioning his treatment on passing a polygraph exam and causing a false result on one such exam. The district court dismissed a portion of Walker's complaint as untimely and granted defendants' motion for summary judgment. Walker appeals, and we affirm the judgment.

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

The sex-offender treatment program is divided into five phases. During the "Accepting Responsibility" stage of Phase II, a detainee may be given a polygraph exam—conducted by a state polygrapher—to assess his level of honesty when discussing his sexual history and sexual offenses. Walker took a polygraph exam in December 2009 and another in March 2010. He passed the first exam but was found to be "not truthful" on the second exam when asked about unreported sexual offenses. Specifically, Walker did not disclose coercive sexual encounters with men while in prison, something he did not consider an "offense" for purposes of his sex-offender treatment. Walker voluntarily withdrew from treatment in June 2010 in protest, explaining that he disagreed with how the examination was conducted and how the results were interpreted. He then challenged the exam results using Rushville's appeals procedure. He has since gone back to treatment but remains relegated to the "Power to Change" stage of Phase II because he continues to object to his treating team's decision that he can progress only by taking and passing another polygraph exam.

In his complaint brought under 42 U.S.C. § 1983, Walker alleged that various doctors and staff at Rushville violated his constitutional rights by conditioning his treatment on passing a polygraph exam. At screening, *see* 28 U.S.C. § 1915A, the district judge first determined that Walker's claims challenging the constitutionality of the March 2010 polygraph exam were barred by the two-year statute of limitations because he filed his original complaint in April 2013.

The judge then dismissed Liberty Healthcare Corporation (Rushville's medical services provider) from the suit, finding that Walker had not adequately alleged that any individual defendant acted pursuant to an unlawful policy for which Liberty Healthcare could be held liable under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).

The judge concluded that Walker could proceed only on his claim that the four defendants personally responsible for his treatment decisions violated his rights by conditioning his treatment on passing a new polygraph exam, thereby stalling his treatment progress. Ultimately, though, the judge entered summary judgment for the defendants, concluding that ordering a polygraph exam and applying a particular definition of "sexual offense" as part of Walker's treatment was within the bounds of professional judgment and therefore constitutional.

Walker appeals the screening orders and entry of summary judgment. We review the district court's dismissals at screening and entry of summary judgment de

novo. *See Hotel 71 Mezz Lender LLC v. Nat'l Retirement Fund*, 778 F.3d 593, 601 (7th Cir. 2015); *McElroy v. Lopac*, 403 F.3d 855, 858 (7th Cir. 2005).

**I**

Walker first argues that the district judge erred in dismissing as untimely his claim that the results of the 2010 polygraph exam were false. His federal claims arising under § 1983 borrow Illinois' two-year statute of limitations. *Woods v. Ill. Dept. of Children and Family Servs.*, 710 F.3d 762, 768 (7th Cir. 2013).

Walker disputes the district judge's conclusion that the statute of limitations began to run when he failed the polygraph exam and could not advance from Phase II. "The statute of limitations begins to run when the plaintiff has knowledge of the injury and knowledge that the defendant[s], acting within the scope of [their] employment, may have caused the injury." *Tobey v. Chibucos*, 890 F.3d 634, 645 (7th Cir. 2018). Walker took the polygraph exam in March 2010, and he protested the exam and withdrew his consent to further treatment in June. Therefore, Walker was aware by June 2010 of his alleged injury—that he could not advance in treatment because of the result of the supposedly bogus polygraph exam—and who caused it; therefore, his April 2013 complaint was too late.

Walker seeks to avoid the time bar by arguing that the defendants continuously violated his rights until August 2017 by withholding Phase III treatment pursuant to an ongoing policy of deliberate indifference to his mental health needs. But the claim that the March 2010 polygraph exam was unconstitutional (in its administration and how the results were used) is based on a discrete incident that occurred at a specific time. The continuing violation doctrine, therefore, does not apply. *See id.* at 646; *Savory v. Lyons*, 469 F.3d 667, 672–73 (7th Cir. 2006). Insofar as Walker still was not receiving treatment when he filed suit, that was not because of the failed polygraph exam, but because of the defendants' requirement, once he consented to start treatment again, that he take a new exam before advancing to Phase III. His claim challenging *that* decision was allowed to proceed.

Walker next maintains that the statute of limitations should be equitably tolled because he did not know that he had a claim until 2013 when, during his civil commitment proceedings, the state court granted Walker's motion to "bar" the state's expert from referencing the March 2010 polygraph because the defendants had not disclosed the data from the exam. (In fact, the motion was deemed moot because the

state did not intend to introduce the polygraph result.) Walker argues that until the state court "legally" established the defendants' wrongdoing in failing to disclose the polygraph data, he did not "know" he was injured and therefore had been unable to file suit. Equitable tolling may apply if Walker was prevented from asserting his rights. *See Rosado v. Gonzalez*, 832 F.3d 714, 716–17 (7th Cir. 2016). But given the nature of his claim here, all Walker needed to know was that he was deemed to fail the exam under circumstances to which he objected and that he could not move on to Phase III without a successful administrative appeal or lawsuit. That occurred no later than June 2010, when he voluntarily withdrew from treatment in protest. His ignorance of the legal significance of what he knew does not permit equitable tolling of the statute of limitations for his claim. *See Tobey*, 890 F.3d at 646; *Rosado*, 832 F.3d at 716–17.

Walker also contends that the defendants should be equitably estopped from enforcing the statute of limitations because they concealed the polygraph data and prevented him from pursuing a meaningful administrative appeal. He claims that he could have known that the polygraph exam violated his rights only by obtaining the raw electronic data from the exam, and that without it, it was mere speculation that he had been injured. Therefore, he argues, the defendants' refusal to release that information wrongly deprived him of his ability to formulate a claim before the statute of limitations expired. Equitable estoppel can apply if the defendants affirmatively sought to prevent Walker from suing on time. *See Rosado*, 832 F.3d at 716. Walker did not need "proof" before he could bring a credible allegation that the exam was poorly administered and its results arbitrarily used to prevent him from progressing in his treatment. And even if the defendants withheld data and stalled the appeals process, Walker knew who was keeping him from progressing to Phase III and why. In short, no wrongful act by any defendant prevented Walker from suing on time. *See id.* at 716–17.

## II

Separate and apart from the district court's statute of limitations ruling, Walker next claims that the district court improperly dismissed his *Monell* claim against Liberty Healthcare. We do not necessarily agree with the court's statement, when screening the amended complaint, that the complaint raised "no plausible inference" that the treatment requirements were "attributable to a corporate policy." Detainees can be referred to take a polygraph pursuant to Liberty's "Polygraph Referral" procedures. But, as we have said, Walker has not identified anything unlawful about his participation in the sex-offender treatment program that the defendants implemented, including the polygraph requirement. *See McKune v. Lile*, 536 U.S. 24, 47–48 (2002);

*Allison v. Snyder*, 332 F.3d 1076, 1081 (7th Cir. 2003). Moreover, Liberty Healthcare cannot be held liable under *Monell* if, as we have concluded, the individual defendants did not violate Walker's constitutional rights while treating him. *See Sallenger v. City of Springfield, Ill.*, 630 F.3d 499, 504 (7th Cir. 2010).

Walker recently filed a motion requesting that we take judicial notice of a screening order in another case that he filed against Liberty Healthcare, in which the district court allowed the *Monell* claim to proceed. (See Order at 2, Walker v. Scott, et al., No. 18-4115 (C.D. Ill. July 30, 2018), ECF No. 4.) We will not, however, take judicial notice of that order because it does not contain any indisputably established *facts* about the potential liability of Liberty Healthcare. *See* FED. R. EVID. 201(b); *In the Matter of Steven Robert Lisse*, 905 F.3d 495, 496–97 (7th Cir. 2018) (Easterbrook, J., Chambers). In the same motion, Walker also requests that we consolidate this case with his other one. That case remains pending in district court, however, and we have no such power. It would also be inefficient to delay resolution of this fully ripe appeal until an appeal in that case, of which there is no guarantee.

**III**

This brings us to Walker's challenge that the district court erroneously granted the defendants' motion for summary judgment on his claim that they were deliberately indifferent to his medical needs by conditioning his Phase III treatment on passing a new polygraph. He contends that the district judge improperly accepted the defendants as polygraph experts and wrongly concluded that their review of the results was a matter of professional judgment. He claims that the defendants are not "experts" under Federal Rule of Evidence 702 and therefore are not entitled to professional deference.

Walker misunderstands the district court's discussion of the defendants' professional judgment. He argues that the inexpert defendants are being deliberately indifferent to his treatment needs by insisting that, before progressing, he undergo a polygraph that requires him to answer questions involving an "unorthodox" definition of "offenses." To succeed on such a claim, he would have to show that the defendants' actions deprived him of his constitutionally protected interest in "conditions of reasonable care and safety." *Youngberg v. Romeo*, 457 U.S. 307, 324 (1982). In the civil detention context, "decisions made by the appropriate professional are entitled to a presumption of correctness." *Id.* "Professionals" are those who are "competent, whether by education, training or experience, to make the particular decision at issue." *Id.* at 323 n.30. And a treatment decision falls outside the scope of professional judgment only

when it is such a departure from accepted standards "that demonstrate[s] that the person responsible actually did not base the decision on such a judgment." *Id.* at 323.

Professionals, such as the defendants, can require a detainee to take a polygraph exam if they deem it part of an effective treatment. *See McKune*, 536 U.S. at 30–31, 47–48; *see also Lane v. Williams*, 689 F.3d 879, 883 (7th Cir. 2012); *Allison*, 332 F.3d at 1079–81. Although Walker disagrees with the decision, there is no evidence in the record that demonstrates that the defendants go outside the boundaries of professional judgment by administering a polygraph exam as part of a detainee's treatment plan. Nor does Walker present evidence that the defendants, who are trained medical professionals, are not qualified to determine appropriate questions and evaluate the significance of his answers as they relate to his sex-offender treatment. *See Allison*, 332 F.3d at 1081. His opinions alone are not sufficient for us to say that the defendants are not "professionals," or that their decisions (the wisdom of which we do not comment on) were based on anything but their professional judgment. *See McGee v. Adams*, 721 F.3d 474, 482 (7th Cir. 2013). Thus, the defendants' treatment decisions were entitled deference under the "professional judgment" standard, *Youngberg*, 457 U.S. at 321–22, and summary judgment was properly entered in their favor.

## IV

Two final observations are in order. In his reply brief, Walker argues that the defendants use Rushville's polygraph appeals process as a "sham" to prevent detainees from filing lawsuits, and that it is therefore "a policy of deliberate indifference" and unconstitutional. But Walker did not develop this argument in his opening brief, so it is waived. *See United States v. Beavers*, 756 F.3d 1044, 1059 (7th Cir. 2014). In any event, Walker insists that the administrative-exhaustion process does not apply to him. Under Walker's view of his obligations, therefore, any time he spent on a "sham" appeal was optional, so he is not in a position to argue that the appeals procedure is unconstitutional.

Walker lastly contends that the district judge improperly failed to recuse herself for judicial bias. But adverse decisions alone do not establish bias, *see Collins v. Illinois*, 554 F.3d 693, 697 (7th Cir. 2009), and Walker cites no other basis for his request.

AFFIRMED